# United States Court of Appeals

## For the First Circuit

No. 03-1587

REDONDO CONSTRUCTION CORP.,
Plaintiff, Appellee,

v.

PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY,
Defendant, Appellant,

HON. JOSÉ M. IZQUIERDO, Secretary of the Department of
Transportation and Public Works in his Official Capacity; Puerto
Rico Public Buildings Authority; HON. ILEANA ECHEGOYEN, in her
Individual and Official Capacity as Secretary of the Puerto Rico
Department of Housing; Conjugal Partnership Doe-Echegoyen; HON.
CARLOS G. LABOY, in his Individual and Official Capacity as
Administrator of the Puerto Rico Housing Administration; Conjugal
Partnership Laboy-Doe; HON. YOLANDA ZAYAS, Secretary of the
Puerto Rico Department of the Family in her Official Capacity;
THE HON. GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO;
DR. FERNANDO FAGUNDO; Conjugal Partnership Fagundo-Doe;
DAVID MONTAÑEZ-DONES; Conjugal Partnership Montañez-Doe;
JOSÉ LLUCH-GARCÍA; Conjugal Partnership Lluch-Doe,
Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

---

Before
Torruella, Lynch and Howard,
Circuit Judges.

---

María P. García-Incera, with whom Luis A. Rivera-Cabrera and
Luis A. Rivera-Cabrera, P.S.C., were on brief, for appellant.
Luis Cotto-Román, with whom Yolanda Benítez de Alegría and
Yolanda Benítez Law Offices, P.S.C., were on brief, for appellee.

---

February 6, 2004

---

**TORRUELLA**, **Circuit Judge**.  Defendant-Appellant Puerto Rico Highway and Transportation Authority ("the Authority") appeals the district court's denial of its claim of Eleventh Amendment immunity as an arm of the state.[1]  After careful review, we affirm.

## I.  Background

On December 14, 2001, plaintiff-appellee Redondo Construction Company ("Redondo") filed a complaint against the Authority and other defendants in the district court, alleging numerous constitutional violations and breach of contract under state law.  The factual background of this underlying lawsuit, which is but one action amongst an array of administrative proceedings and litigation in both Commonwealth and federal courts, is irrelevant to the single issue of Eleventh Amendment immunity before us.

On October 30, 2002, the district court denied injunctive relief and dismissed all of Redondo's constitutional claims except those relating to interference with present contractual relations. Regarding the Authority's sovereign immunity claim, the district court analyzed the factors outlined in Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935 (1st Cir. 1993) and Univ. of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200 (1st

---

[1]  The Commonwealth of Puerto Rico is treated as a state for purposes of the Eleventh Amendment.  De León López v. Corporación Insular de Seguros, 931 F.2d 116, 121 (1st Cir. 1991).

-2-

Cir. 1993), and concluded that the Authority was not entitled to immunity as an arm of the state.

The Authority sought reconsideration of the district court's opinion in a Motion to Amend Judgment filed on November 12, 2002, which was denied by the district court on February 25, 2003. Meanwhile, on January 15, 2003, the district court partially granted the Authority's request to stay the federal court proceedings in response to a November 12, 2002 decision of the Puerto Rico Court of Appeals confirming that the Department of Transportation and Public Works had primary jurisdiction in the administrative proceedings under way.

In the interim, the Authority has filed this appeal to request review of the district court's sovereign immunity decision under the collateral order doctrine. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147 (1993) (state entity claiming to be arm of the state may take advantage of collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity).

## II. **Analysis**

We review de novo the district court's denial of Eleventh Amendment immunity. Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 22 (1st Cir. 2001).

After the district court opinion was issued, this court reformulated its arm-of-the-state analysis for Eleventh Amendment

immunity in response to intervening Supreme Court precedent. Fresenius Med. Care Cardiovascular Resources, Inc. v. Puerto Rico & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56 (1st Cir. 2003), cert. denied, 124 S.Ct. 296 (2003) ("Fresenius"). Fresenius applied the two-stage framework of Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30 (1994), to the question of whether a special-purpose public corporation established by a state should enjoy Eleventh Amendment immunity. Fresenius, 322 F.3d at 64-68. Under Fresenius, a court must first determine whether the state has indicated an intention -- either explicitly by statute or implicitly through the structure of the entity -- that the entity share the state's sovereign immunity. Id. at 65. If no explicit indication exists, the court must consider the structural indicators of the state's intention. If these point in different directions, the court must proceed to the second stage and consider whether the state's treasury would be at risk in the event of an adverse judgment. Id.

This two-stage framework thus "explicitly recognizes the Eleventh Amendment's twin interests: protection of the fisc and the dignity of the states." Id. at 64-65 (citing Hess, 513 U.S. at 39-40). The Supreme Court has recently stressed that, distinct from financial concerns, the state "also has a 'dignity' interest as a sovereign in not being haled into federal court." Id. at 63 (citing Federal Marine Comm'n v. S.C. State Ports Auth., 535 U.S.

-4-

743 (2002)).  Similarly, the state has both dignitary and fiscal interests in identifying which state entities are not to share its immunity.  Id. ("It would be every bit as much an affront to the state's dignity and fiscal interests were a federal court to find erroneously that an entity was an arm of the state.").  A state's choice to establish an entity excluded from the protection of its sovereign immunity implicates important policy concerns:

> Not all entities created by states are meant to share state sovereignty.  Some entities may be part of an effort at privatization, representing an assessment by the state that the private sector may perform a function better than the state.  Some entities may be meant to be commercial enterprises, viable and competitive in the marketplace in which they operate.  Such enterprises may need incentives to encourage others to contract with them, such as the incentives of application of usual legal standards between private contracting parties.  The dollar cap on recovery found in many state sovereign immunity statutes would be a powerful disincentive to a private party to contract with an entity, unless the private party first obtained a waiver of immunity from the entity.  In Puerto Rico, a breach of contract action against the Commonwealth is capped at $75,000.
>
> . . . In sum, states set up entities for many reasons.  An erroneous arm-of-the-state decision may frustrate, not advance, a state's dignity and its interests.

Id. at 64 (internal citations omitted).  The first stage of the arm-of-the-state analysis thus "pays deference to the state's dignitary interest in extending or withholding Eleventh Amendment immunity from an entity."  Id. at 65.

The Authority argues that, inter alia, the extent of the Commonwealth's control over the Authority and the Authority's involvement in the traditional governmental function of building public roads clearly indicate a legislative intention to structure the Authority as an arm of the state, despite the Authority's ability to make expenditures, to charge tolls and fees, to own and dispose of property, to make contracts, to sue and be sued, and to issue bonds that create no obligation on the part of the Commonwealth. The district court considered these, and other, indicators of the Authority's relationship to the Commonwealth and concluded that the Authority's administrative and financial independence excluded it from Eleventh Amendment protection.

On appeal, Redondo contends that the Commonwealth's intention to deny the Authority the protection of state sovereign immunity has been clearly established by two decisions in which the Supreme Court of Puerto Rico held that the statutory structure of the Authority indicates that it was designed to operate as a private enterprise, not as an instrumentality of the state. Morales Morales v. Autoridad de Carreteras, 140 D.P.R. 1 (1996); Unión Asociación de Empleados Profesionales y Clericales de la Autoridad de Carreteras v. Labor Relations Bd. of Puerto Rico, 19 P.R. Offic. Trans. 139 (1987). We agree.

The precise role of state court decisions in determining an entity's entitlement to Eleventh Amendment immunity has not been

defined. Fresenius, 322 F.3d at 68 n.12. While Eleventh Amendment immunity is without doubt a question of federal law, "that federal question can be answered only after considering the provisions of state law that define the agency's character." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 n.5 (1997). In a similar context, the Supreme Court has found the opinion of the state's highest court highly persuasive: "But even if our own examination [of the status of counties under California state law] were not sufficient for present purposes, we have the clearest indication possible from California's Supreme Court of the status of California's counties." Moor v. County of Alameda, 411 U.S. 693, 720 (1973) (holding that counties have sufficiently independent corporate character to be treated as citizens of California for diversity purposes).

This court has previously stated that "[w]hile not dispositive, consistent decisions of a state's highest court construing an agency's or institution's relationship with the central government are important guideposts in a reasoned attempt to locate the agency's or institution's place within the scheme of things." Metcalf & Eddy, 991 F.2d at 942. In the context of state waivers of Eleventh Amendment immunity, we have confirmed that "legislative intent is a matter of state law, on which the highest court of a state speaks with finality." Della Grotta v. Rhode Island, 781 F.2d 343, 347 (1st Cir. 1986)(citing Mullaney v.

-7-

<u>Wilbur</u>, 421 U.S. 684, 690-91 (1975)). "Where the highest court of a state has construed a state statute as intending to waive the state's immunity to suit in federal court, the state's intent is just as clear as if the waiver were made explicit in the state statute." <u>Id</u>. Here, the Supreme Court of Puerto Rico has twice held that the statutory structure of the Authority clearly indicates a legislative intent that the Authority act as a private enterprise outside the protection of the Commonwealth's immunity. <u>Morales Morales</u>, 140 D.P.R. 1; <u>Unión Asociación de Empleados</u>, 19 P.R. Offic. Trans. 139.[2] The Commonwealth's intention thus clearly expressed, and the first part of the <u>Fresenius</u> test thus met, we need not proceed to consider the structural indicators of the entity's status or the risk to the Commonwealth's treasury. The Commonwealth's highest court has held that the statutory structure of the Authority indicates that Puerto Rico did not intend it to be

---

[2] State court decisions offering only conclusory determinations of an entity's legal character or failing to engage in an inquiry based on analogous jurisprudential concerns might prove less persuasive. <u>Univ. of Rhode Island</u>, 2 F.3d at 1205 n.8 (treating as inconclusive state court decisions failing to "engage[] in an extended analysis of the Board's corporate powers or characteristics"); <u>Moor</u>, 411 U.S. at 721 n.54 (questioning the persuasive power of state court decision that failed to undertake an independent analysis of the legal character of the entity); <u>Jacintoport Corp.</u> v. <u>Greater Baton Rouge Port Comm'n</u>, 762 F.2d 435, 438 (5th Cir. 1985)(refusing to follow state court opinions because they "did not deal with the precise question before us, nor was their inquiry based on even analogous jurisprudential concerns"). However, that is not the case here.

treated as an arm of the state, and we see no reason to decide otherwise.[3]

### III.  **Conclusion**

For the reasons stated above, we affirm the district court's decision that the Puerto Rico Highway and Transportation Authority is not an arm of the state and thus is not entitled to immunity from suit under the Eleventh Amendment.

**Affirmed**.

---

[3]  The deference here afforded to the determination of state legislative intent by the state's highest court does not suggest that a similar deference would be merited in the converse scenario of a state court determination that an entity shares the state's immunity.  When the vindication of federal rights is at issue, a state court determination that the state intends an entity to share its immunity, while worthy of consideration among other indicators, does not substitute for an independent analysis under the federal standard to determine whether the entity should indeed benefit from the Eleventh Amendment's protection.  See, e.g., Hess, 513 U.S. at 45 (denying immunity to a bi-state entity despite state court decisions describing it as an agency of the states).