S03G1813, S03G1821. HINES et al. v. GEORGIA PORTS
AUTHORITY et al.; and vice versa.
S03G1820, S03G1848. GEORGIA PORTS AUTHORITY et al. v.
ANDRE RICKMERS SCHIFFSBETEILIGUNGSGES mbH &
COMPANY KG; and vice versa.
(604 SE2d 189)

FLETCHER, Chief Justice.

The central issue in these granted certiorari is whether the Georgia Ports Authority is entitled to immunity under the Eleventh Amendment of the United States Constitution for claims sounding in maritime law. The Court of Appeals concluded that the Ports Authority did enjoy Eleventh Amendment immunity. Because the record evidence shows that the Ports Authority is not an arm of the state under the federal law governing Eleventh Amendment immunity, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Johnny Hines, a longshoreman, was working on a container ship docked at a Georgia Ports Authority terminal. Paul Wood, an employee of the Ports Authority, was operating a crane to load containers onto the ship. Wood was allegedly negligent in the crane operation and this negligence caused Hines to suffer injuries. Hines and his wife, Elsie Hines, brought suit for his injuries and her loss of consortium against Wood, the Ports Authority, and Andre Rickmers Schiffsbeteiligungsges mbH & Company KG, the owner of the ship. Andre Rickmers filed a cross-claim for contribution and indemnity against the Ports Authority and Wood. The Ports Authority and Wood filed motions to dismiss all claims based on the failure to comply with the procedural requirements of the Georgia Tort Claims Act, OCGA § 50-21-20 et seq. The trial court denied all motions.

The Court of Appeals affirmed in part and reversed in part, holding that (1) state-conferred sovereign immunity could not protect the Ports Authority or Wood from federal maritime claims, (2) the Ports Authority enjoyed Eleventh Amendment immunity and it had not been waived, (3) Woods did not have Eleventh Amendment immunity, and (4) Andre Rickmers had no right of contribution against the Ports Authority, but did retain a right of contribution against Wood. In sum, the Court of Appeals held that all claims against the Ports Authority must be dismissed, but that the claims against Wood could proceed.[1]

---

[1] *Ga. Ports Auth. v. Andre Rickmers Schiffsbeteiligungsges mbH & Co. KG*, 262 Ga. App. 591 (585 SE2d 883) (2003).

This Court granted four certiorari petitions arising from this decision and stated it was concerned with the following: (1) whether State-conferred sovereign immunity protects State authorities and employees from federal maritime claims; (2) whether compliance with the ante-litem requirements of the Georgia Tort Claims Act is required in asserting federal maritime claims; (3) whether Eleventh Amendment immunity can protect the Georgia Ports Authority from federal maritime claims; and (4) whether Andre Rickmers is entitled to contribution and indemnity.

## ADMIRALTY AND MARITIME LAW

A claim sounding in admiralty law is governed by federal admiralty and maritime law, regardless of whether brought in state or federal court.[2] Admiralty tort jurisdiction extends to incidents occurring on navigable waters that bear a substantial relationship to traditional maritime activity, and have a potentially disruptive impact on maritime commerce.[3] The allegations of the complaint show that the injury to Johnny Hines occurred on a ship in navigable waters while he was a longshoreman engaged in traditional maritime activity. Therefore, his claim is governed by admiralty law. Additionally, Elsie Hines's claim for loss of consortium is also governed by admiralty law.[4] Thus, the Ports Authority's claim of immunity must be viewed through the lens of admiralty and maritime law.

## STATE-CONFERRED SOVEREIGN IMMUNITY

The Ports Authority enjoys immunity under the State Constitution.[5] However, the United States Supreme Court held in *Workman v. Mayor of New York City*[6] that state-conferred immunity is preempted by admiralty law. Thus, the Ports Authority does not enjoy state-conferred immunity for the Hines's claims that sound in admiralty law.

---

[2] *Kermarec v. Compagnie Generale Transatlantique*, 358 U. S. 625, 628 (79 SC 406, 3 LE2d 550) (1959).

[3] *Jerome B. Grubhart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U. S. 527, 534 (115 SC 1043, 130 LE2d 1024) (1995); Thomas J. Schoenbaum, 1 *Admiralty and Maritime Law*, § 3-4 (4th ed. 2001).

[4] *Miles v. Apex Marine Corp.*, 498 U. S. 19, 31 (111 SC 317, 112 LE2d 275) (1990) (loss of society damages available when injury to longshoreman occurs in territorial waters).

[5] *Miller v. Ga. Ports Auth.*, 266 Ga. 586 (470 SE2d 426) (1996).

[6] 179 U. S. 552, 560 (21 SC 212, 45 LE 314) (1900); see also *In re Chicago Flood Litigation*, 719 NE2d 1117, 1129 (Ill. App. 1999) (holding Illinois Tort Claims Act preempted by admiralty law and citing similar cases).

The Ports Authority nonetheless contends that the ante-litem notice requirements of the Georgia Tort Claims Act apply to claims sounding in admiralty law. However, *Workman* makes clear that any state-imposed procedural requirement must yield in admiralty claims.[7] Therefore, the procedural requirements of the Georgia Tort Claims Act do not apply to claims governed by admiralty law.

## ELEVENTH AMENDMENT IMMUNITY

The Ports Authority also contends that the plaintiffs' claims are barred by the Eleventh Amendment. It is well-settled that Eleventh Amendment immunity, unlike state-conferred immunity, does apply to admiralty and maritime claims.[8]

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." In 1999, the United States Supreme Court held that the Eleventh Amendment also protects states and arms of the state from private suits brought in their own courts by any person.[9] It does not protect state officers or employees sued in their individual capacities.[10] Nor does it protect "lesser entities" that are not "an arm of the state."[11] Whether an entity is an arm of the state for Eleventh Amendment purposes is a question of federal law.[12]

The United States Supreme Court has, in several cases, discussed the purposes of the Eleventh Amendment and the considerations that determine whether an entity is an arm of the state for purposes of the Eleventh Amendment.[13] The Eleventh Circuit Court

---

[7] *Workman,* 179 U. S. at 560.

[8] *Ex Parte New York,* 256 U. S. 490, 497 (41 SC 588, 63 LE 1057) (1921).

[9] *Alden v. Maine,* 527 U. S. 706, 754 (119 SC 2240, 144 LE2d 636) (1999).

[10] *Hafer v. Melo,* 502 U. S. 21, 30 (112 SC 358, 116 LE2d 301) (1991); *Jackson v. Ga. Dept. of Transp.,* 16 F.3d 1573, 1577 (11th Cir. 1994).

[11] *Alden,* 527 U. S. at 756.

[12] *Regents of the Univ. of Cal. v. Doe,* 519 U. S. 425, 429, n. 5 (117 SC 900, 137 LE2d 55) (1997).

[13] *Alden v. Maine,* 527 U. S. at 749 (purposes of Eleventh Amendment are to prevent " 'the indignity of subjecting a State to the coercive process of judicial tribunals' " and "the prospect of being thrust . . . into the disfavored status of a debtor, subject to the power of private citizens to levy on its treasury or perhaps even government buildings or property"); *Auer v. Robbins,* 519 U. S. 452, 456, n. 1 (117 SC 905, 137 LE2d 79) (1997) (City Board of Police Commissioners was not an arm of the state because the state was not responsible for the board's financial liabilities "and the board is not subject to the State's direction or control in any other respect"); *Hess v. Port Authority Trans-Hudson Corp.,* 513 U. S. 30, 44-46 (115 SC 394, 130 LE2d 245) (1994) ("impetus for the Eleventh Amendment: the prevention of federal-court judgments that must be paid out of a State's treasury").

of Appeals recently articulated a succinct test, consistent with Supreme Court precedent, for determining whether Eleventh Amendment immunity applies.[14] The Eleventh Circuit test focuses on three factors: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; and (3) from where the entity derives its funds and who is responsible for satisfying the judgments against the entity.[15] Other federal courts of appeals have applied similar tests[16] and the United States Supreme Court has explained why the last factor is the most important one: "If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise? When the answer is 'No' — both legally and practically — then the Eleventh Amendment's core concern is not implicated."[17]

### 1. Financial Structure.

Turning to the most important factor first, we examine the financial structure of the Ports Authority. The Ports Authority may raise its own revenue by issuing bonds.[18] Its bonds are not a debt of, nor a pledge of the faith and credit of, the state, and are repayable only from Ports Authority earnings.[19] It may borrow money[20] and acquire property in its own name.[21] Although the Governor may make available to the Ports Authority funds appropriated for the construction of port facilities,[22] the General Assembly is not required to appropriate any funds to satisfy Ports Authority debts or ongoing operations.[23] The Ports Authority must set fees and rentals for services and facilities so that the Ports Authority is financially self-sufficient:

---

[14] *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309 (11th Cir. 2003).

[15] *Vierling*, 339 F.3d at 1314.

[16] See, e.g., *Perez v. Region 20 Ed. Svc. Center*, 307 F.3d 318, 326-327 (5th Cir. 2002); *Fresenius Medical Care &c. v. Puerto Rico and the Caribbean Cardiovascular Center Corp.*, 322 F.3d 56, 68 (1st Cir. 2003) (two step analysis – has state clearly structured entity to share its sovereignty and whether state has legally and practically obligated itself to pay entities indebtedness); *Gorman v. Easley*, 257 F.3d 738, 743-744 (8th Cir. 2001), rev'd on other grounds sub. nom., *Barnes v. Gorman*, 536 U. S. 181 (122 SC 2097, 153 LE2d 230) (2002); *Alkire v. Irving*, 330 F.3d 802, 812-813 (6th Cir. 2003); *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3rd Cir. 1999).

[17] *Hess*, 513 U. S. at 51.

[18] OCGA § 52-2-15.

[19] OCGA § 52-2-24.

[20] OCGA §§ 52-2-9 (8), 52-2-11.

[21] OCGA § 52-2-9 (3).

[22] OCGA § 52-2-12.

[23] *State Ports Auth. v. Arnall*, 201 Ga. 713, 726 (41 SE2d 246) (1947) (holding unconstitutional act that obligated state treasury to pay cost of maintaining Ports Authority facilities); see also *Miller*, 266 Ga. at 590 (Carley, J., dissenting) (state treasury is not at risk from a judgment against the Ports Authority). Compare OCGA § 12-3-240 (Office of Planning and Budget authorized to transfer sufficient funds for ongoing operations of Jekyll Island Park Authority).

> Such rentals and other charges shall be so fixed and adjusted in respect of the aggregate thereof from the project or projects for which a single issue of revenue bonds is issued, as to provide a fund sufficient with other revenues of the project or projects, if any, to pay: (1) the cost of new construction of projects; (2) the cost of maintaining, repairing, and operating the project or projects, including reserves for extraordinary repairs and insurance . . . ; and (3) the principal of the revenue bonds and the interest thereon.[24]

Finally, the profits of the Ports Authority are held in trust and can only be used for purposes set forth in the statutes establishing the Ports Authority.[25]

In its supplemental brief, the Ports Authority contends that an analysis of State budgets shows that the Ports Authority is not self-sufficient. The citations provided, however, do not establish that the Ports Authority is financially dependent on the State. The direct appropriations cited are ambiguous — it is not clear whether monies appropriated to the Department of Industry and Trade are for rental obligations owed by the Department to the Ports Authority or for obligations owed by the Ports Authority.[26] Additionally, while the legislature has authorized general obligation debt for the financing of facilities for the Ports Authority, the Ports Authority does not contend, and nothing in the record shows, that these bonds are paid wholly from general tax revenues, as opposed to being repaid by Ports Authority earnings and revenue.[27] Furthermore, the extent to which the State chooses to fund the Ports Authority is less relevant than the extent to which it is required to pay its debts.[28]

Finally, two federal circuit cases dealing with ports authorities support this conclusion. In *Vierling*, the Eleventh Circuit concluded that a Florida ports authority did not have immunity, primarily because it *was* financially self-sufficient.[29] In *Ristow v. South Carolina Ports Auth.*,[30] the Fourth Circuit Court of Appeals held that the

---

[24] OCGA § 52-2-31 (a).

[25] OCGA § 52-2-36; but see *Hess*, 513 U. S. at 51 ("the proper focus is not on the use of profits or surplus, but rather on losses and debts").

[26] See OCGA § 52-2-32 (a) (rentals contracted with Ports Authority by the state or any department shall be paid from funds appropriated for such purposes). See, e.g., 2003 Ga. Laws 710, 735; 1997 Ga. Laws 46, 74.

[27] See, e.g., 2003 Ga. Laws 710, 771; 1992 Ga. Laws 1701, 1780.

[28] *Hess*, 513 U. S. at 46 (court's assumption that states would step in if authority were in trouble insufficient in absence of legal liability).

[29] 339 F.3d at 1315.

[30] 58 F.3d 1051 (4th Cir. 1995).

South Carolina ports authority did have immunity, primarily because the South Carolina ports authority *was not* self-sufficient because its extensive capital improvements were paid for with bonds that were wholly repaid from general tax revenues.[31]

Because the record in this case indicates that the Ports Authority is self-sufficient and is not intertwined with the State's treasury, this factor suggests that the Ports Authority is not an arm of the state for Eleventh Amendment purposes.[32]

*2. State Law and State Control.*

The other two factors are mixed, but tend to weigh towards a finding of no immunity. The state law defining the Ports Authority is somewhat contradictory: on the one hand, the Ports Authority is a "body corporate and politic," and a "public corporation"[33] rather than a part of any existing state agency.[34] On the other hand, the Ports Authority is "performing an essential governmental function."[35]

Similarly, the degree of control maintained by the State is also mixed. Facts showing State control over the Ports Authority include the power of the governor to appoint the members of the Ports Authority board,[36] the requirement of State approval for the purchase or sale of real property,[37] and the exemption of Ports Authority property and income from taxation.[38] Facts demonstrating lesser State control include fixed terms for board members,[39] Ports Authority control over its chair, vice-chair and the establishment of its own rules and regulations,[40] the authority to enter construction contracts

---

[31] Id. at 1054.

[32] An analysis of the Ports Authority budget would be most useful in determining whether it was dependent upon the State, but the Ports Authority chose to submit its contention of immunity to the trial court on a motion to dismiss, rather than on a motion for summary judgment supported by an evidentiary record.

[33] OCGA § 52-2-4.

[34] See *McLucas v. State Bridge Building Auth.*, 210 Ga. 1, 6 (77 SE2d 531) (1953) ("body corporate and politic" is an instrumentality of the state, but is not part of the state, as it has distinct corporate identity); *Wojcik v. Mass. State Lottery Commission*, 300 F.3d 92, 100 (1st Cir. 2002) (fact that commission is not separately incorporated, but is division of state agency supports finding that it is arm of the state).

[35] OCGA § 52-2-37.

[36] OCGA § 52-2-5. But see *Vogt v. Bd. of Commrs. of Orleans Levee District*, 294 F.3d 684, 695 (5th Cir. 2002) (appointment process given less weight than scope of entity's authority over day-to-day activities).

[37] OCGA §§ 52-2-11 (2), 52-2-13.

[38] OCGA § 52-2-37. *Christy v. Penn. Turnpike Commission*, 54 F.3d 1140, 1148 (3rd Cir. 1995) (exemption from taxation is a sign of sovereignty).

[39] *Pendergrass v. Greater New Orleans Expressway Commission*, 144 F.3d 342, 347 (5th Cir. 1998) (noting state control less when governor's appointments serve for fixed terms rather than at governor's pleasure).

[40] OCGA §§ 52-2-5 (d), 52-2-7.

without taking competitive bids,[41] and a lack of supervisory control over the daily operations of the Ports Authority.[42] Additionally, unlike many state authorities, the Authority is not assigned to any executive department for administrative purposes and is not required to have its books inspected by the State auditor.[43] Finally, the Ports Authority may make contracts with the state[44] and may sue the State to enforce contracts made between the State and the Ports Authority.[45]

After considering all these factors, we conclude that the Ports Authority is not an arm of the State. Our previous decision in *Miller* that the Ports Authority was entitled to state-conferred sovereign immunity does not demand a contrary conclusion.[46] A state court decision that an organization is an "agency" of the state for purposes of state-conferred immunity is different from a determination under federal law as to whether an organization is an "arm of the state" for Eleventh Amendment purposes.[47] Additionally,

> [w]hen the vindication of federal rights is at issue, a state court determination that the state intends an entity to share its immunity, while worthy of consideration among other indicators, does not substitute for an independent analysis under the federal standard to determine whether the entity should indeed benefit from the Eleventh Amendment's protection.[48]

Finally, the *Miller* decision was not grounded in the same jurisprudential underpinnings of the Eleventh Amendment.[49]

---

[41] OCGA § 52-2-35. Compare OCGA §§ 2-10-10, 12-3-705 (b), 50-25-7.3 (a) (state authorities required to use competitive bid process).

[42] OCGA §§ 52-2-7, 52-2-9, 52-2-11, 52-2-31, 52-2-33. See *Vogt*, 294 F.3d at 695 (lack of supervisory control over day-to-day operations counsels against 11th Amendment immunity).

[43] Compare OCGA §§ 2-10-3, 12-3-232, 12-3-290, 12-3-311, 12-3-361, 12-3-402, 12-3-443, 12-3-472, 12-3-562, 12-3-653, 20-2-552, 20-3-152, 20-3-324, 20-15-3, 31-7-22, 42-3-4, 46-9-321, 50-9-4 (assigning state authorities to state departments for administrative purposes); OCGA §§ 6-4-6 (e), 12-3-234, 12-3-293, 12-3-313, 12-3-363, 12-3-402 (f), 12-3-448, 12-3-472 (f), 12-3-522 (f), 12-3-562 (f), 12-3-583, 12-3-656 (b), 20-15-3 (g), 46-9-325, 50-32-4 (requiring state authorities to have books audited by state auditor).

[44] OCGA § 52-2-9 (5). See *Fresenius Medical Care*, 322 F.3d at 68-69 (ability of public corporation to make contracts with state is evidence that it is not arm of the state).

[45] OCGA § 52-2-32 (b).

[46] *Miller*, 266 Ga. 586.

[47] *Vogt*, 294 F.3d at 690.

[48] *Redondo Constr. Corp. v. Puerto Rico Highway & Transp. Auth.*, 357 F.3d 124, n. 3 (1st Cir. 2004).

[49] See *Jacintoport Corp. v. Greater Baton Rouge Port Commission*, 762 F.2d 435, 438 (5th Cir. 1985) (rejecting state court analysis that did not follow Eleventh Amendment jurisprudential concerns); *Redondo*, 357 F.3d at 128, n. 2 (same).

## CONTRIBUTION AND INDEMNITY CLAIMS

The final question on which we granted certiorari was whether Andre Rickmers had a right of contribution and indemnity against the Ports Authority. The Court of Appeals concluded that Andre Rickmers could not pursue its claims against the Ports Authority because the Ports Authority enjoyed Eleventh Amendment immunity.[50] As discussed above, however, the Ports Authority does not enjoy immunity under the Eleventh Amendment. Because claims of contribution and indemnity are recognized in admiralty and maritime law,[51] there is no bar to Andre Rickmers' claim for contribution and indemnity.

*Judgment reversed. All the Justices concur.*

DECIDED OCTOBER 12, 2004 —
RECONSIDERATION DENIED NOVEMBER 22, 2004.

*Jones, Boykin, Stacy & Associates, Noble L. Boykin, Jr., Hunter, Maclean, Exley & Dunn, Robert S. Glenn, Jr., Marc G. Marling, David F. Sipple, Clark, Clark & Steinmetz, Fred S. Clark,* for Hines et al. and Andre Rickmers Schiffsbeteiligungsges mbH & Co. KG.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Ranitz, Mahoney, Mahoney & Moss, Thomas J. Mahoney, Jr., Thomas J. Mahoney III, Mary K. Moss,* for Georgia Ports Authority et al.

---

[50] *Ga. Ports Auth.*, 262 Ga. App. at 596-597.

[51] *Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc.*, 417 U. S. 106, 110-111 (94 SC 2174, 40 LE2d 694) (1974) ("application of the rule of division of damages between joint tortfeasors in admiralty cases has been as broad as its underlying rationales").