Vivian T. JOHNSON, Plaintiff,

v.

**OGEECHEE BEHAVIORAL HEALTH SERVICES, Defendant.**

No. 605CV121.

United States District Court,
S.D. Georgia,
Statesboro Division.

Feb. 21, 2007.

Crystal M. James, Crystal James & Associates, LLC, Douglasville, GA, for Plaintiff.

Patricia J. Craft, Patricia J. Craft, PC, Decatur, GA, for Defendant.

## ORDER

EDENFIELD, District Judge.

### I. INTRODUCTION

Plaintiff Vivian T. Johnson brings this action pursuant to Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12102, 12111–12117 ("ADA"), after being fired by defendant Ogeechee Behavioral Health Services ("Ogeechee"). Ogeechee moves for summary judgment, alleging to be an arm of the State of Georgia, thus entitled to Georgia's Eleventh Amendment immunity. In the alternative, Ogeechee moves for summary judg-

ment on the merits of Johnson's ADA claim.

## II. BACKGROUND [1]

■ Ogeechee is a Georgia Community Service Board [2] (CSB) providing counseling, training, job-skill development, job placement, and support for the developmentally disabled. Doc. # 38 at 2; doc. # 46 at 1–2. From 2/16/04 to 5/9/05, Johnson worked for Ogeechee as an instructional aide at JenCo Industries, an Ogeechee program providing hands-on job training to Ogeechee's consumers. Doc. # 38 at 2; doc. # 46 at 1–2. Johnson's duties were educational and supervisory in nature— teaching consumers job functions like recycling-center tasks, yard work, and cleaning, supervising crews performing such work, and helping with the work. Doc. # 46 at 2; doc. # 38 at 3.

At some point in early 2005, Johnson was diagnosed with erosive osteoarthritis in both of her hands. Doc. # 47 at 3. Around 4/25/05, Johnson arranged to have a letter signed by her physician outlining the duties of her position she could and could not perform; she also spoke with her supervisor about her limitations. Id. at 2– 3. Johnson requested that JenCo Industries accommodate her ailment by assigning her to a particular JenCo Industries location and by having another instructional aide tie up bundles of newspapers. Id. at 2.

Despite her requests, Johnson's supervisor continued scheduling Johnson for work away from the desired location. Id. Johnson then submitted to her supervisor the signed letter from her physician outlining the duties she could and could not perform. Id. at 2–3. On 5/9/05, an Ogeechee superior called Johnson into the administrative office and informed her that she could either resign or be fired. Id. at 3. When Johnson demanded a reason for the termination, she was told to contact someone even higher up (Dan Bernard), which Johnson did. Id. On 5/10/05, Johnson talked to Bernard, who told her she was fired because she was diagnosed with erosive osteoarthritis. Id. Johnson and Bernard also discussed a similarly situated employee who was receiving a reasonable accommodation for a similar ailment. Id. at 4. Nonetheless, the decision to terminate Johnson stood.

## III. ANALYSIS

"Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' A genuine factual dispute exists if the jury could return a verdict for the non-moving party." Wilson, 376 F.3d at 1085 (cites omitted).

### A. Eleventh Amendment Immunity

■ Ogeechee first argues that the Eleventh Amendment of the United States

1. In adjudicating a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir.2004).

2. Georgia community service boards "provide mental health, developmental disabilities, and addictive diseases services." O.C.G.A. § 37–2–6. "[A] community service board [is] created under state law, which makes it a Georgia

state agency." Kinchen v. Gateway Comm. Serv. Bd., 2006 WL 3803014 at *1 (11th Cir.12/28/06) (unpublished). Thus, community service boards share Georgia's state sovereign immunity. Id.; see also Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd., 273 Ga. 715, 545 S.E.2d 875 (2001) (community service boards are state "departments or agencies" entitled to state sovereign immunity).

**1360**

Constitution cloaks it with immunity.[3] Doc. # 33.

> The Eleventh Amendment provides immunity by restricting federal courts' judicial power:
>
>> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
>
> U.S. Const. amend. XI. The Eleventh Amendment protects a State from being sued in federal court without the State's consent.... It is also well-settled that Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an "arm of the State" is sued.

*Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir.2003) (en banc) (6–5). When a state agency is sued, the question is "whether [the] state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment...." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n. 5, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).

■ To determine whether CSBs like Ogeechee are arms of the State, the Court must look to four factors enumerated in *Manders*: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; (4) who is responsible for judgments against the entity." 338 F.3d at 1309. Initially, the Court will discuss the legislation creating and governing CSBs.[4]

In recognition of its responsibility to "citizens who are mentally ill or developmentally disabled," the State of Georgia enacted comprehensive legislation to help those citizens. O.C.G.A. § 37–2–1. As part of the legislation, the State created a Division of Mental Health, Developmental Disabilities, and Addictive Diseases ("the Division") within the State Department of Human Resources ("DHR"). O.C.G.A. § 37–2–2.1. The Division then designates "community service board areas [ ('CSB areas') ]", which shall serve as boundaries for the establishment of community service boards within this state for the purpose of

---

**3.** Johnson sought to amend her Complaint to plead a theory around this defense, and argues that the Magistrate Judge who denied that motion erred. Doc. ## 23, 24 (motions to amend); doc. # 44 (Magistrate Judge's Order); doc. # 49 (Johnson's response). She argues that because the amended complaint alleged a violation of the Rehabilitation Act, and because States have waived Eleventh Amendment immunity for Rehabilitation Act claims, the Eleventh Amendment argument fails. *See Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1293 (11th Cir.2003). This argument will be discussed *infra*, but provides the Court no help in adjudicating Ogeechee's argument for Eleventh Amendment immunity to Johnson's ADA claim.

**4.** The state dissolved and recreated CSBs on 7/1/06. *See* O.C.G.A. § 37–2–6 (2006 Supp.).

Because Johnson raises no argument that the pre–2006–amendment statutory scheme should apply, the Court will, with limited exceptions for background, refer to current law. Ogeechee does not argue that it is not liable for the actions of pre-dissolution Ogeechee, and it concedes that the 7/1/06 change has no effect on the Eleventh Amendment inquiry. *See* Ga. Laws 2006, Act 544, H.B. 1223 § 10 (amending O.C.G.A. § 37–2–6, *inter alia* ) ("Nothing in this Act shall be construed to affect or abate any right accrued or vested prior to July 1, 2006 ...."); doc. # 34 at 10 n. 4 (Ogeechee's concession that "[a]lthough some provisions ... were amended in 2006, there were no substantive changes regarding the entitlement of community service boards to sovereign immunity....").

delivering disability services." O.C.G.A. § 37–2–3(b).

A CSB operates in each CSB area to provide "mental health, developmental disabilities, and addictive diseases services." O.C.G.A. § 37–2–6(a). While each CSB is "a public corporation and an instrumentality of the state,"

> the liabilities, debts, and obligations of a community service board shall not constitute liabilities, debts, or obligations of the state or any county or municipal corporation and neither the state nor any county or municipal corporation shall be liable for any liability, debt, or obligation of a community service board.

*Id.*

The number of members sitting on a CSB board is determined by county population, and the CSB members are "appointed by the governing authorities of the counties within the [CSB] area." O.C.G.A. § 37–2–6(b). Each CSB adopts its own bylaws, operational policies, and guidelines, within the general provisions of the legislation. O.C.G.A. § 37–2–6(h).

CSBs have myriad powers as set forth in O.C.G.A. § 37–2–6.1(b). They include: adopting bylaws, entering contracts, dealing in land; contracting to use state or federal services; contracting with "appropriate state or local governmental entities" to provide benefits to employees (or independently providing benefits to employees); cooperating with other governmental entities to provide services; receiving grants;charging for disability services (pursuant to contract terms with DHR); borrowing equipment from counties and municipalities that the CSB services; reimbursing CSB board members for expenses; contracting with the State Merit System of Personnel Administration to administer employees; borrowing money; and operating facilities for the provision of services.

Though CSBs are public bodies under O.C.G.A. § 37–2–6.3(a), they can bring suit and be sued, O.C.G.A. § 37–2–6.3(b), and "[d]ebts, obligations, and liabilities of the [CSB] are not, [sic] debts, obligations, or liabilities of the state or of the counties in which such board operates," O.C.G.A. § 37–2–6.3(c).

A CSB may, with approval of the counties served by the CSB, convert into a private nonprofit corporation, a unit of the county government, or a component of a hospital authority in the CSB area. O.C.G.A. § 37–2–6.4(a). If such a reconstitution occurs and the counties become dissatisfied with the services provided, the counties can form a new CSB. O.C.G.A. § 37–2–6.4(b). Finally, a CSB can decide, with the blessing of the counties, to cease operations, at which point the DHR steps in to help wind it down and replace it with another authority. O.C.G.A. § 37–2–6.5. If a CSB fails to provide adequate service to the disabled in the CSB area or breaches a contract with the DHR, the Division's Director can step in and "establish and administer community programs on an emergency basis." O.C.G.A. § 37–2–10(a). If a CSB fails in this way, the Division's Director, the Commissioner of DHR, and the Governor can agree to have DHR take the CSBs assets and employees and run the CSBs programs. O.C.G.A. § 37–2–10(b).

As to litigation against CSBs, venue lies in the county where the CSBs principal office is located. O.C.G.A. § 37–2–11.1(a). The Attorney General does not assist CSBs in litigation, though he does assist regional boards. O.C.G.A. § 37–2–11.1(b). The definition of CSBs for litigation, contained in O.C.G.A. § 37–2–11.1(c), is as follows:

> (1) The community service boards shall be public bodies but shall not be considered agencies of the state or any specific

county or municipality. *Such community service boards are public agencies in their own right and shall have the same immunity as provided for counties.* No county shall be liable for any action, error, or omission of a community service board. Notwithstanding any provisions of law to the contrary, and regardless of any provisions of law which grant employees of the community service boards benefits under programs operated by the state or which deem them to be state employees only for purposes of those benefits, *employees of the community service boards shall not be employees of the state but shall be employees of the community service boards* and, further, the state shall not be liable for any action, error, or omission of such employees.

O.C.G.A. § 37–2–11.1(c) (emphasis added).

### 1. State Law Definition of CSBs

■ As noted above, the Georgia Legislature defined CSBs for the purpose of litigation as follows:

Such community service boards are public agencies in their own right and shall have the same immunity as provided for counties.

O.C.G.A. § 37–2–11.1(c)(1). Counties are not arms of the state. *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 47, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) ("cities and counties do not enjoy Eleventh Amendment immunity"); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ("The bar of the Eleventh Amend-

ment to suit in federal courts ... does not extend to counties and similar municipal corporations" (cites omitted)).[5] Thus, state law explicitly places CSBs beneath the stratum of governmental entities entitled to Eleventh Amendment immunity, in the substrata with counties and municipalities.

Ogeechee points to *Youngblood v. Gwinnett Rockdale Newton Community Service Board*, 273 Ga. 715, 545 S.E.2d 875 (2001), where Georgia's Supreme Court held that CSBs are "departments or agencies of the State" entitled to state sovereign immunity under the Georgia Constitution. *Id.* at 716, 545 S.E.2d 875. Ogeechee argues that *Youngblood's* holding is equivalent to a holding that CSBs are arms of the state. This argument is unpersuasive. Georgia courts have held entities "department[s] or agenc[ies] of the State" for Georgia sovereign immunity purposes while holding them not to be arms of the state for Eleventh Amendment purposes. *Compare Miller v. Ga. Ports Auth.*, 266 Ga. 586, 589, 470 S.E.2d 426 (1996) (holding Georgia Ports Authority is a state agency entitled to state sovereign immunity) *with Hines v. Ga. Ports Auth.*, 278 Ga. 631, 631, 604 S.E.2d 189 (2004) (holding "the Ports Authority is not an arm of the state under the federal law governing Eleventh Amendment immunity").

■ Furthermore, being a state agency is the first step toward qualification as an arm of the state, not the last. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. at 429 n. 5, 117 S.Ct. 900 (inquiry is "whether [the] *state agency* has the same kind of

---

**5.** Recently, the Supreme Court suggested that counties, though not arms of the state, could be entitled to Eleventh Amendment immunity where *acting* as an arm of the state. *N. Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189, 126 S.Ct. 1689, 1693–94, 164 L.Ed.2d 367 (2006) ("Because the County may claim immunity neither based upon its identity as a

county nor under an expansive arm-of-the-State test, the County is subject to suit unless it was acting as an arm of the State, as delineated by this Court's precedents, in [performing the lawsuit-inducing function]"). Ogeechee makes no argument that it was *acting* as an arm of the state; it only argues that it *is* an arm of the state.

independent status as a county or is instead an arm of the State ...." (emphasis added)). As the court noted in *Hines,*

> Our previous decision in *Miller* that the Ports Authority was entitled to state-conferred sovereign immunity does not demand a ... conclusion [that the Ports Authority is an arm of the state]. A state court decision that an organization is an "agency" of the state for purposes of state-conferred immunity is different from a determination under federal law as to whether an organization is an "arm of the state" for Eleventh Amendment purposes. Additionally,
>
>> [w]hen the vindication of federal rights is at issue, a state court determination that the state intends an entity to share its immunity, while worthy of consideration among other indicators, does not substitute for an independent analysis under the federal standard to determine whether the entity should indeed benefit from the Eleventh Amendment's protection.

*Id.* at 637, 604 S.E.2d 189 (footnotes omitted) (quoting *Redondo Const. Corp. v. Puerto Rico Highway & Transp. Auth.,* 357 F.3d 124, 128 n. 3 (1st Cir.2004)). Notably, the *Hines* court did not cite *Miller* as relevant to the determination of how state law defines the Ports Authority. *See id.* at 636, 470 S.E.2d 426.

It could also be argued (though it is not) that the legislature's definition of CSBs in O.C.G.A. § 37–2–11.1(c)(1) has no effect after *Youngblood.* There, the court held that the section was unconstitutional insofar as it attempted to limit CSBs state sovereign immunity without regard to requirements set forth in the Georgia Constitution. *Youngblood,* 273 Ga. at 716–17, 545 S.E.2d 875. The argument that *Youngblood* strikes such statutory section, however, has been rejected:

> [The appellee] urges us to ignore the statutory scheme governing community service boards, asserting that *Youngblood* declared the scheme unconstitutional. In *Youngblood,* however, the Supreme Court deemed O.C.G.A. § 37–2–11.1(c)(1) unconstitutional to the extent it afforded community services boards— which are State agencies or departments—the same immunity granted counties. Nothing in *Youngblood* declares the entire scheme unconstitutional or questions the legislature's authority to create community service boards that are separate and distinct from [the state Department of Human Resources].

*Dep't of Human Res. v. Crews,* 278 Ga. App. 56, 59, 628 S.E.2d 191 (2006). The Georgia legislature defined CSBs as entities akin to counties, O.C.G.A. § 37–2–11.1(c)(1); *Youngblood* merely enforced the requirement that when an entity is akin to a county, but also a department or agency of the state, the legislature must follow Georgia's constitutional requirements to waive state sovereign immunity.[6] Thus, the first *Manders* factor cuts against Eleventh Amendment immunity.

### 2. *Degree of State Control*

Ogeechee argues that it is controlled by the State of Georgia because: (a) its employees receive state benefits (including medical, retirement, pension, disability, and life insurance): (b) its employees are subject to the State Merit System of Personnel Administration; (c) DHR exercises

---

**6.** It is worth noting that the Georgia Constitution's limits on waiving sovereign immunity are inapplicable to the inquiry here—whether an entity is an arm of the state *entitled* to immunity. *See* GA. CONST. art. I, sec. II, para. IX. Nothing in this constitutional provision suggests it limits the legislature's ability to create different governmental entities, like counties and municipalities.

programmatic control over the CSB; and (d) Ogeechee's property is state property.

As an initial matter, the Court notes that this case is different from *Manders*. In *Manders*, the court framed the inquiry as whether county sheriffs in Georgia are controlled by the State or the county. In dissent, Judge Anderson defined the inquiry as "whether the sheriff has carried his burden of proving that he is an arm of the state. In other words, the issue is not the state versus the county; rather, the issue is whether the sheriff is an arm of the state *vel non*." *Manders*, 338 F.3d at 1331 (Anderson, J. dissenting).[7]

Here the issue is whether CSBs are arms of the state or autonomous units akin to counties; no one argues that counties control CSBs. Thus, Judge Anderson's mode of inquiry better frames the control issue here—whether the State of Georgia controls CSBs *vel non*.

None of Ogeechee's proffered controls are relevant. The first three controls Ogeechee cited—that employees receive state benefits, employees are governed by State Merit System of Personnel Administration, and the DHR exercises programmatic control-are pursuant to *contracts* entered by Ogeechee. *See* O.C.G.A. §§ 37–2–6(a); 37–2–6.1(b)(4, 5) (CSBs contract with DHR to provide services; CSBs have the option of contracting with the State Merit System; CSBs may provide state benefits by contracting with the Department of Community Health). Thus, while it can be argued that Ogeechee is controlled by DHR now, in fact that control arises merely from a contract that Ogeechee willingly entered, and need not even renew. *See Crews*, 278 Ga.App. at 58–59, 628 S.E.2d 191 (CSBs are not part of

DHR, and if the statutory scheme made CSBs part of DHR then the scheme would not anticipate CSB–DHR contracts).

In fact, should Ogeechee and the counties so choose, Ogeechee could reconstitute itself as a completely private entity not governed by the statutory scheme at all. O.C.G.A. § 37–2–6.4. Thus, the State forfeited the ultimate control—the power "to destroy or reshape any political subdivision as it sees fit." *Manders*, 338 F.3d at 1322 n. 41.

Also, the fact that Ogeechee employees receive state benefits and are governed by the State Merit System evidences only the fact that they are state employees, and not that the CSB itself is state-controlled. For that matter, these facts are red herrings because, benefits and governance notwithstanding, Ogeechee employees are *not* state employees. O.C.G.A. § 37–2–11.1(c)(1) ("regardless of any provisions of law which grant employees of the community service boards benefits under programs operated by the state or which deem them to be state employees only for purposes of those benefits, employees of the community service boards shall not be employees of the state but shall be employees of the community service boards and, further, the state shall not be liable for any action, error, or omission of such employees"); *see Crews*, 278 Ga.App. at 59, 628 S.E.2d 191.

It could be argued (though, again, it is not) that here, like in *Manders*, the State exercises control because it disciplines CSBs. The *Manders* court held that Georgia controlled its sheriffs because the State directed the training of sheriffs and the

---

7. The majority rejected this framing because "[t]hroughout this litigation the parties have briefed and framed the legal issue in this case *solely* as whether Sheriff Peterson in his official capacity acts on behalf of the State *or* [the] County in the context of the Eleventh Amendment." *Manders*, 338 F.3d at 1328 n. 54.

Governor disciplined sheriffs for misconduct. 338 F.3d at 1320–21.

Here, if a CSB fails to perform contractual obligations or fails to provide services—what could be deemed misconduct—the state can step in and take over the CSB's programs, in which case CSB employees become DHR employees, and CSB assets become DHR assets. O.C.G.A. § 37–2–10(b). The reasoning in *Manders* is suspect; every entity and individual in the State is subject to the control of the State's power to define, investigate, and punish misconduct. Therefore this power is exercised equally over those that are arms of the state and those that are not. Nevertheless, under *Manders*, the power to discipline constitutes the power to control, so the State exercises some control over Ogeechee and the second *Manders* factor cuts slightly toward Eleventh Amendment immunity.

### 3. *Funds*

Though Ogeechee raises some revenue through grants and fees for services, O.C.G.A. § 37–2–6.1(b), 94.66% of its operating funds came from the state of Georgia in 2005, and a similar percentage is expected in 2006–2007. Doc. # 34 at 14. Thus, the third *Manders* factor cuts toward Eleventh Amendment immunity.

### 4. *Liability for and Payment of Adverse Judgments*

Finally, the Court must look to the "source of the funds that will pay any adverse judgment against" Ogeechee. *Manders*, 338 F.3d at 1324. The law in Georgia is clear:

> the liabilities, debts, and obligations of a community service board shall *not* constitute liabilities, debts, or obligations of the state or any county or municipal corporation and neither the state nor any county or municipal corporation

shall be liable for any liability, debt, or obligation of a community service board. O.C.G.A. § 37–2–6(a) (emphasis added). When it comes to debt and liability, then, CSBs are autonomous entities. "The Eleventh Amendment, however, does not turn a blind eye to the state's sovereignty simply because the state treasury is not directly affected." *Manders*, 338 F.3d at 1327 n. 51. *But see Hess*, 513 U.S. at 59, 115 S.Ct. 394 (O'Connor, J. dissenting) ("The Court takes a *sufficient* condition for Eleventh Amendment immunity [—a drain on the state treasury—] and erroneously transforms it into a *necessary* condition"; *i.e.*, Justice O'Connor read the majority opinion in *Hess* differently than did the *Manders* majority).

In *Manders*, for instance, the state was not liable for adverse judgments against a sheriff in his official capacity. *Id.* at 1327. But because judgments would come out of the sheriff's office budget, which would then need to be raised for the following year, the state would end up paying the judgment anyway. *Id.* The argument here would be as follows: debts and liabilities are business costs; the state pays 94.66% of Ogeechee's business costs; thus despite O.C.G.A. § 37–2–6(a) the state could end up paying 94.66% of Ogeechee's debts and liabilities. It was by this reasoning that the court in *Manders* held the fourth factor to be a wash. *See Manders*, 338 F.3d at 1328 ("at a minimum, the liability-for-adverse-judgment factor does not defeat [defendant]'s immunity claim").

The key difference between this case and *Manders* lies in the tacit assertion that the sheriff's office must be budgeted every year. Here, in contrast, the DHR can not only refuse to budget an indebted CSB, it can step in and take over the CSBs operations, assume control over the CSBs employees and assets, O.C.G.A. § 37–2–10(b), and write off debts pursuant

to O.C.G.A. § 37–2–6(a). So unlike in *Manders*, the protection of the State from liability or indebtedness a CSB might accrue is total, and this cuts against finding CSBs immune under the Eleventh Amendment.

States have authority to create a variety of subordinate governmental entities. The Eleventh Amendment protects the State's arms, not its offspring. Here, the State of Georgia created CSBs—entities defined as autonomous units akin to counties; entities over which the State exercises almost no control; and entities which, though they require State money to operate, cannot create any State debt or liability.

■ Thus, with full respect to Judge Alaimo's contrary conclusion in *Crane v. Pineland Mental Health, Mental Retardation, & Substance Abuse Community Service Board*, 206CV047 (S.D.Ga.1/25/07) (unpublished), this Court concludes that CSBs are not entitled to Eleventh Amendment immunity. Ogeechee's first motion for summary judgment is therefore denied, and because the Court is now confident that Eleventh Amendment immunity does not apply (hence, jurisdiction over the claim is appropriate) the Court can turn to Ogeechee's second motion.

### B. ADA Claim

■ To establish a *prima facie* case under the ADA, Johnson must demonstrate that she: "(1) ha[s] a disability; (2)[is] qualified, with or without reasonable accommodations; and (3) w[as] unlawfully discriminated against because of the[ ] disability." *Rossbach v. City of Miami*, 371 F.3d 1354, 1356–57 (11th Cir.2004); *see also* 42 U.S.C. § 12112(a). Ogeechee argues it is entitled to summary judgment because Johnson is unable to prove she suffers from a "disability," the first element of the ADA *prima facie* case. Doc. # 36.

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

■ Johnson admits that her erosive osteoarthritis is not a disability under the ADA, doc. # 45 at 7 (noting that "she does not believe herself to have a disability" though "she did have a record of impairment . . . and she was regarded as being disabled"); *cf. Toyota Motor Mfg., Ky. Inc. v. Williams*, 534 U.S. 184, 191, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) ("The word 'substantial' . . . clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities"), but counters that she is within the ADA's protected class under either the "record of" or the "regarded as" definition of disability. Doc. # 45 at 7; 42 U.S.C. § 12102(2)(B)-(C).

■ Johnson contends that the letter from her physician notifying Ogeechee of her condition and detailing the duties she could not perform proves both that Ogeechee had a record of impairment (the letter) and that they regarded her as having an impairment after reading the letter. *See* doc. # 45 at 7 (making no argument, but citing to portions of Johnson's testimony wherein she discussed the letter and the reason for her termination being her arthritis). To qualify for the protected class under the "record of" or "regarded as" definition of disability, however, the defendant must have a record of plaintiff having, or regard plaintiff as having, an impairment *that substantially limits one or more of the major life activities of such*

*individual.* 42 U.S.C. § 12102(2)(A)-(C); *see Carruthers v. BSA Advertising, Inc.,* 357 F.3d 1213, 1216 (11th Cir.2004) ("As with actual impairments, however, the perceived impairment must be one that, if real, would limit substantially a major life activity of the individual").

Johnson's contention is that Ogeechee had a record of her having, or regarded her as having, the same *non*-major-life-activity-limiting arthritis that she actually has. The contention is insufficient to place Johnson in the ADA protected class because she does not assert or provide evidence that Ogeechee had a record of her having, or regarded her as having, arthritis that *substantially limited one or more major life activities.* Thus, while Johnson has raised evidence that she was fired because of her impairment, she has failed to create a question of fact that she was within the ADA's protected class under any of its definitions of "disability." Even when viewing the evidence in the light most favorable to Johnson she is not in the ADA protected class, therefore Ogeechee's second motion for summary judgment must be granted.

## C. Amending the Complaint

 Johnson argues that the Magistrate Judge erred in denying her motions to amend to add a Rehabilitation Act claim. Doc. # 44. Any error was harmless. "The standard for determining liability under the Rehabilitation Act is the same as that under the ADA." *Sutton v. Lader,* 185 F.3d 1203, 1207 n. 5 (11th Cir.1999). Thus, the analysis in Part III(B) *supra* would apply equally to defeat Johnson's Rehabilitation Act claim, even were it permitted by amendment.

## IV. *CONCLUSION*

The Court *DENIES* defendant Ogeechee Behavioral Health Services's first mo-

tion for summary judgment (doc. # 33), but *GRANTS* its second motion for summary judgment (doc. # 36). Therefore, the Court *DISMISSES WITH PREJUDICE* plaintiff Vivian T. Johnson's Complaint.