**Ana REYES–GARAY, et al., Plaintiffs,**

v.

**INTEGRAND ASSURANCE COMPANY, et al., Defendants.**

**Civil No. 10–1477 (DRD).**

United States District Court, D. Puerto Rico.

Sept. 30, 2011.

Carlos C. Santiago–Gonzalez, Carlos C. Santiago Law Office, San Juan, PR, for Plaintiffs.

Wigberto Lugo–Mender, Centro Internacional De Mercadeo, Guaynabo, PR, for Defendants.

## OMNIBUS OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

Plaintiffs Ana Reyes–Garay, her husband, José Rosa–Rivera, and their conjugal partnership (collectively, "Plaintiffs" or "Tenants") have resided in Section 8 housing in Old San Juan, Puerto Rico for over twenty years. In April of 2010, the concrete from the ceiling in their apartment became detached and fell on Ana Reyes. Plaintiffs bring this instant suit under Section 8 of the U.S. Housing Act, 42 U.S.C. § 1437f, and regulations promulgated thereunder, specifically, 24 C.F.R. § 982.162(a)(3) and 24 C.F.R. § 982.456(b)(2), 42 U.S.C. § 1983 ("Section 1983"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and the Fair Housing Act (Title VIII of the Civil Rights Act of 1968), 42 U.S.C. § 3601 et seq. Plaintiffs further bring claims arising under the laws of Puerto Rico which are attached to the instant case via the exercise of the Court's supplemental jurisdiction. Plaintiffs are suing, amongst other entities, Old San Juan # 1 DLP Associates, who own the Old San Juan apartment building ("Landlord"), their insurance company Integrand Assurance Company, the Puerto Rico Housing Finance Authority ("PHA"), and PHA's Executive Director, George R. Joyner–Kelly, and PHA's Manager of Inspections and Appraisals, Luis A. Rivera (collectively, the "Individual Defendants"), who are sued in both their official and individual capacities.

## I. RELEVANT FACTUAL BACKGROUND

Tenants have resided at 207 Luna Street, Apartment 1–E, in Old San Juan, Puerto Rico for over twenty years. Plaintiffs' participated in the U.S. Department of Housing and Urban Development's ("HUD") Section 8 Housing Choice Voucher Program.[1]

On September 27, 2004, Tenants and Landlord executed a lease agreement that included a Tenancy Addendum.[2]

On April 2, 2010, the concrete in Plaintiffs' ceiling detached and collapsed on top of 71 year old Ana Reyes. She suffered cuts and various fractures to her right leg, resulting in several surgeries and 43 days of hospitalization.[3]

On April 12, 2010, Plaintiffs had their own structural engineer examine the premise. Two days later, on April 14, 2010, PHA performed a "Special Inspection" of the unit. The PHA found numerous issues that needed to be rectified before Plaintiffs could safely reoccupy the dwelling.

On April 16, 2011, at Plaintiffs' request, Landlord offered Plaintiffs the right to reoccupy an apartment within the same building. José Rosa–Rivera accepted the Landlord's offer and occupied a third floor unit. However, Ana Reyes decided to re-

---

1. In 2004, Plaintiffs switched from "project-based" Section 8 housing to the Housing Choice Voucher Program, formerly known as "tenant-based" Section 8 housing. In the Housing Choice Voucher Program, the tenant selects a housing unit and the local housing authority approves of the unit.

2. Under the Housing Choice Voucher Program, the tenant and the landlord execute a lease agreement and the housing authority

and the landlord sign the HUD-required Housing Assistance Payment ("HAP") contract. Under the HAP, generally, the housing authority pays the landlord the difference between the tenant's below-market rental payment and the fair market value of the rental.

3. In addition to these injuries, Ana Reyes also suffers from chronic kidney failure, necessitating dialysis treatment, hypothyroidism and diabetes.

cuperated elsewhere as she was unable to climb stairs to the third floor unit.

On the same date, PHA requested that Landlord procure an Expert Certification regarding the repairs performed to the ceiling in order to maintain the tenancy assistance.

On May 12, 2010, Landlord informed Tenants that the PHA had suspended their tenancy assistance with respect to their former apartment pending Landlord's compliance with the applicable safety regulations.

On May 21, 2010, PHA reinspected the dwelling to certify if Landlord corrected the deficiencies reported during the April of 2010 Special Inspection.

On May 24, 2010, Tenants petitioned the PHA to delay deciding whether the Landlord's repairs are adequate until Tenants' structural expert inspects the repairs and submits a report.

On May 28, 2010, the PHA agreed to delay its decision, but requested that Tenants submit their expert report no later than June 4, 2010. On the same date, Landlord requested that Tenants supply three potential dates for their expert to inspect the dwelling.

On June 1, 2010, Tenants informed PHA and Landlord that their expert would need to inspect the unit no later than tomorrow, June 2, 2010, to comply with the PHA's proposed deadline. Further, Tenants reiterated a prior request to review the Landlord's Expert Certification provided to the PHA.

Also on June 1, 2010, PHA informed Tenants that their rental assistance had been reinstated.

On June 4, 2010, Landlord alleged to Tenants that PHA had approved of the unit and thus the dwelling was "ready for immediate occupation." Landlord also advised Tenants to move back so their expert could perform his inspection at their con-venience. Landlord further informed Tenants that, as they had commenced the instant litigation, their Expert Certification would be turned over in accordance with the Federal Rules of Civil Procedure.

On June 7, 2010, Tenants stated to Landlord that they should not be forced to reoccupy the dwelling until their expert is allowed perform an inspection to ascertain the unit's habitability and structurally soundness.

On June 17, 2010, PHA informed Tenants that its June 1, 2010 letter was sent in error and thus Tenants' rent subsidy remained cancelled. PHA additionally stated that it had agreed to postpone any evaluation of Landlord's repairs until reviewing their expert's report. PHA also stated that it had requested that Landlord coordinate with Tenants to provide an inspection no later than June 25, 2010.

The following day, Tenants sent the PHA a letter reiterating that Landlord had not yet provide their Expert Certification, thus Tenants could not comply with the June 25, 2010 deadline.

On June 22, 2010, Landlord invited Tenants' expert to inspect the unit. Landlord also stated that PHA had revoked the reinstatement of the Tenants' subsidy in order to wait for Tenants' expert's report. Landlord additionally remarked that "[i]f a favorable determination is not reached by the expert and the agency within the time table provided by Mr. Rivera in his June 17, 2010 letter[,] we shall understand the unit is not suitable to be occupied."

On June 25, 2010, Tenants requested that the Court order Landlord to produce its Expert Certification (Docket No. 18) and Landlord complied on August 17, 2010 (Docket No. 28).

On July 6, 2010, PHA notified Landlord that the tenancy assistance for Apartment 1–E was canceled and that Tenants must now find a new housing unit.

On August 12, 2010, Landlord requested that Tenants remove all of their belongings from both their first floor unit and their third floor unit by August 25, 2010.

## II. PROCEDURAL HISTORY

On September 15, 2010, Landlord filed a motion to dismiss (Docket No. 62), which was responsive to Plaintiffs' Second Amended Complaint. Landlord advances that there is no private right of action under Section 8 or under the regulations promulgated thereof. Landlord further argues that Plaintiffs lack an implied right of action under federal common law. Lastly, Landlord posits that Plaintiffs are not, as Plaintiffs allege, third party beneficiaries of the HUD Contract and Regulatory Agreement.

On September 20, 2010, PHA filed a motion to dismiss (Docket No. 66), also responsive to Plaintiffs' Second Amended Complaint. Therein, PHA reiterate Landlord's lack of a private cause of action under Section 8 argument and further alleges that the Eleventh Amendment of the Constitution shields PHA from liability. PHA also contends that there is not a private right of action for tenants to enforce HUD benefits and privileges. PHA additionally avers that Plaintiffs have failed to state cognizable claim under Section 1983 as Section 8 does not provide an individual right of action to tenants of federally funded housing.

PHA also argues that the Fifth Amendment's Due Process Clause does not provide Plaintiffs with a remedy as the Fifth Amendment only applies to the federal government and Plaintiffs have not alleged that any defendant is a federal actor. Further, PHA states that the Eleventh Amendment provides PHA, and Joyner and Rivera, in their official capacities, with immunity. PHA advances that, as a public institution that receives substantial funding from the government of Puerto Rico, it is an instrumentality of the Commonwealth of Puerto Rico; thus qualifying as an "arm" of the state for Eleventh Amendment purposes.

On October 15, 2010, Plaintiffs filed the Third Amended Complaint (Docket No. 84). Therein, Plaintiffs allege that Landlord's and PHA's failure to promptly restore Plaintiffs to their original apartment violates Section 8 and the implementing regulations, specifically the HQS. Plaintiffs also state that under the regulations, Plaintiffs may exercise any right or remedy against Landlord, pursuant to their lease agreement and Landlord's obligations under the tenancy addendum; the tenancy addendum provides that Landlord and PHA must maintain the unit in accordance with the HQS. In support of their Section 1983 claim, Plaintiffs further aver that they have a constitutionally protected property interest in their federal subsidized housing and in their leased dwelling. Plaintiffs also claim that Landlord is a state actor.

On October 31, 2010, Plaintiffs opposed PHA's motion to dismiss (Docket No. 107) and echoed previously advanced arguments. Plaintiffs state that HUD regulation § 982.456(b)(2) provides Tenants with the right to enforce Landlord's obligations under the Tenancy Addendum of their lease agreement "in accordance with Federal law and regulation." Plaintiffs allege that under these rights, Tenants can enforce the Landlord's obligation to comply with HQS. Plaintiffs aver that Landlord is denying them this right to enforce the HQS and thus denying them the right to verify if the ceiling repairs are truly adequate. Plaintiffs also contend that while the PHA delayed making a determination on the safety of their unit until their structural engineer submitted his report, the PHA gave an unreasonable deadline for this report. Further, Plaintiffs charge that the PHA insensitively canceled the

tenancy assistance for 207 Luna Street and required Plaintiffs to secure new housing. Plaintiffs aver that the PHA should have instead made a reasonable accommodation because Ana Reyes is handicapped. Plaintiffs further argue that the Court has subject matter jurisdiction under either the Fair Housing Act or the Rehabilitation Act on account of Ana Reyes' disability.

In response to the PHA's motion to dismiss, Plaintiffs state that they have a valid Section 1983 claim because Section 8 tenants have a sufficient property interest in their benefits and that the PHA violated the procedural due process rights. Plaintiffs claim that their procedural due process rights were violated by the PHA not providing written grounds for the cancellation of their tenancy and for failing to provide an informal hearing. Additionally, Plaintiffs assert that the Eleventh Amendment is inapplicable because the PHA officials violated Plaintiffs' clear established constitutional rights of providing an informal hearing.

On November 5, 2010, Individual Defendants filed a motion (Docket No. 110) requesting that they be permitted to restate their position joining and adopting PHA's motion to dismiss (Docket No. 66). Individual Defendants seek to have PHA's motion to dismiss (Docket No. 66) deemed responsive to Plaintiffs' Third Amended Complaint (Docket No. 84).[4] Individual Defendants argue that § 504 of the Rehabilitation Act does not create personal liability.

On November 15, 2010, PHA filed a *Reply and Cross–Motion to Dismiss the Third Amended Complaint* (Docket No. 114).[5] PHA argues that there is no private right of action to enforce Section 8 benefits as the statute focuses on the entity being regulated and not the rights granted to individual tenants. Additionally, PHA avers that Plaintiffs have failed to plead a § 1983 claim as Plaintiffs cannot establish that their Fourteenth Amendment substantive or procedural due process rights were violated. PHA also states that the Fifth Amendment's Due Process Clause is unavailing to Plaintiffs as that Amendment only applies to the federal government and Plaintiffs have not alleged that any of the defendants are federal actors. PHA further claims that the Eleventh Amendment bars the instant suit from proceeding in federal court as PHA has not explicitly waived its constitutional immunity.

■ Additionally, PHA advocates that the Rehabilitation Act claims against the Defendants Joyner and Rivera, in their individual capacities, must fail because there is no personal liability under the Rehabilitation Act. PHA states that dismissal is also warranted for Plaintiffs' Rehabilitation Act claims because Plaintiffs failed to provide PHA with an opportunity to accommodate Plaintiffs through established administrative procedures.[6] PHA further claims that Plaintiffs have not plead or established that Plaintiff Ana Reyes is disabled within the meaning of

4. The Court previously granted Individual Defendants leave to join PHA's motion to dismiss (Docket Nos. 96 and 101); therefore, the Court **NOTES** Individual Defendants' restated position. Additionally, the Court **GRANTS** Individual Defendants' request to have PHA's motion to dismiss (Docket No. 66) deemed responsive to Plaintiffs' Third Amended Complaint.

5. As the Court has deemed PHA's motion to dismiss (Docket No. 66) responsive to Plain-

tiffs' Third Amended Complaint, the Court will address those arguments made in the first motion to dismiss (Docket No. 66) as well as those arguments explicitly made in PHA's second motion to dismiss (Docket No. 114).

6. The Court notes that the Rehabilitation Act does not require a plaintiff to exhaust administrative remedies. *See Brennan v. King,* 139 F.3d 258, 268 n. 12 (1st Cir.1998)("Unlike the ADA ... the Rehabilitation Act does not require exhaustion. The Rehabilitation Act de-

the Rehabilitation Act. PHA asserts that these same reasons for dismissal under the Rehabilitation Act apply with equal force to the FHA and that Plaintiffs have not established a prima facie case under the FHA.

On November 10, 2010, Individual Defendants sought permission to join PHA's *Reply and Cross–Motion to Dismiss the Third Amended Complaint* (Docket No. 114).[7]

On December 17, 2010, Plaintiffs opposed Defendants' motion to dismiss and filed a *Motion for Declaration of Right to Bring a Fair Housing Act's Action* (Docket No. 131). Therein, Plaintiffs advance a retaliation claim under the FHA's § 3617. Plaintiffs assert that they have standing to sue in federal court because Defendants retaliated against Plaintiffs after Plaintiffs engaged in a protected activity. Plaintiffs further argue that Ana Reyes is disabled within the meaning of the FHA because she has a physical impairment that substantially limits a major life activity, such as her ability to walk; she has a record of having such an impairment; and because she is "regarded" as having such an impairment.

Plaintiff claimed that the Landlord and/or the PHA retaliated against Plaintiffs after Plaintiffs lodged numerous administrative and legal complaints to ensure compliance with federal standards for housing quality. Plaintiff argues that these complaints are a "protected activity," and that the PHA, subsequently, cancelled Plaintiffs' Section 8 housing assistance and Landlord threatened to evict them. Plaintiffs also allege that they have demonstrated a prima facie case of retaliation and, therefore, Defendants bear the burden of proffering a legitimate, non-retaliatory reason for the cancellation of Plaintiffs' tenancy assistance and the threat of eviction.

Plaintiffs further assert that they have standing to sue in federal court under the FHA. Plaintiffs argue that they meet the requirements of the statute in that Plaintiffs qualify as an "aggrieved person" who suffered an "injury in fact" due to PHA's and Landlord's interference with a legally protected interest. Specifically, Plaintiffs claim that PHA and Landlord interfered with Plaintiffs' structural-expert investigation and their administrative and legal complaints seeking compliance with federal standards for structural housing quality.

Lastly, Plaintiffs advocate that the Court should deny Defendants' motion to dismiss (Docket No. 114) arguing, *inter alia*, that Defendants had both direct and indirect knowledge of Ana Reyes' disability.

Also on December 17, 2010, Plaintiffs filed a *Statement of Facts In Support of Plaintiffs' Motion for Declaration of Right to Bring a Fair Housing Act's Action (Thus Resolving that Plaintiffs have Standing to Sue in Federal Court)* (Docket Nos. 131 and 132).[8] Therein, Plaintiffs provide a lengthy and detailed history of events and interactions between the parties.

On December 20, 2010, Plaintiffs filed several exhibits to supplement their opposition to the motion to dismiss and statement of facts (Docket No. 133).[9]

---

rives its procedural requirements from Title VI, which does not have an exhaustion requirement.").

**7.** The Court hereby **GRANTS** Individual Defendants' request (Docket No. 119) to join PHA's *Reply and Cross–Motion to Dismiss the Third Amended Complaint* (Docket No. 114).

**8.** The Court hereby **NOTES** Plaintiffs' Statement of Facts (Docket No. 132).

**9.** The Court hereby **NOTES** Plaintiffs' supplemental facts and supporting affidavit (Docket No. 133).

The following day, on December 21, 2010, PHA filed a motion to strike (Docket No. 134) Plaintiffs' statement of facts and supporting exhibits and affidavits (Docket Nos. 132 and 133). PHA first advances that Plaintiffs have not complied with the Court's instructions for Plaintiffs to limit their arguments to whether Plaintiffs have a right to enforce the HQS and to whether a private right of action exists to enforce HUD benefits. Second, PHA avers that Plaintiffs should not be permitted to go beyond the four corners of their complaint in order to assert federal jurisdiction. PHA also notes that some Plaintiffs exhibits are filed in the Spanish language. Lastly, PHA claims that several submitted photographs are not only irrelevant, but also violate the Federal Rules of Evidence in that the photos raise issues of hearsay and authentication.

Two days later, on December 23, 2010, PHA replied to Plaintiffs' opposition to the motion to dismiss and their cross motion (Docket No. 135). PHA noted that Plaintiffs did not respond to PHA's arguments to dismiss under Section 1983 and the Rehabilitation Act. PHA claims that Plaintiffs have failed to prove that Ana Reyes is disabled. PHA also question Plaintiffs' assertion that PHA developed a discriminatory animus against Plaintiffs after twenty years of living in the same Section 8 housing unit. PHA further opposes Plaintiffs' claim that PHA and Landlord attempted to interfere with Plaintiffs' structural engineer's investigation. On December 30, 2010, Plaintiffs filed a sur-reply (Docket No. 136). Plaintiffs state that they have previously addressed PHA's attacks on their Rehabilitation Act claim and their Section 1983 claim. Regarding Ana Reyes' disability status, Plaintiffs clarify that Ana Reyes suffers from chronic kid-

ney failure, hypothyroidism and diabetes in addition to the risk that her leg will ultimately need to be amputated in the future. Further, Plaintiffs claim that Ana Reyes is disabled because she is regarded as disabled and because her impairments substantially limit a major life activity such as walking. Additionally, Plaintiffs assert that once PHA meets its burden to proffer the legitimate, non-discriminatory reasons for the cancellation of Plaintiffs' lease, then Plaintiffs will be able to prove that the proffered explanation is false. Lastly, Plaintiffs maintain that PHA deprived Plaintiffs of a due process hearing and did not permit them to examine PHA's expert report about the ceiling repairs.

On January 7, 2011, Plaintiffs opposed PHA's motion to strike (Docket No. 137). Plaintiffs argue that the *Statement of Facts* merely details and corroborates the complaint's allegations. Plaintiffs also assert that a court may consider additional materials while resolving an issue of subject matter jurisdiction. Plaintiffs admit that some exhibits are in Spanish, but state that these contents reiterate what is already in the complaint. Plaintiffs also request leave to provide certified translations if the Court deems it necessary. Regarding Plaintiffs' submitted photographs, Plaintiffs claim that the photographs are relevant and that they have been submitted for the purpose of establishing Defendants' knowledge and not to prove Ana Reyes' disability. Plaintiffs admit that these photographs are not properly authenticated but state that Plaintiffs are willing to submit an affidavit to authenticate them. Lastly, Plaintiffs claim that the exhibits are submitted not for the purpose of demonstrating subsequent remedial measures and thus should not be excluded under Rules 407 and 408, respectively, of the Federal Rules of Evidence.[10]

10. The Court was very explicit in both the October 14, 2010 hearing (Docket No. 95) and the Court's subsequent *Order* stating that Plaintiffs' filings shall be "EXPRESSLY LIMITED to the two grounds set forth by the Court during the hearing on 10/14/2010,"

On January 10, 2011, PHA filed second a motion to strike Plaintiffs' opposition to PHA's first motion to strike (Docket No. 138). PHA notes that Plaintiffs' opposition (Docket No. 137) is untimely under the Federal Rules of Civil Procedure.

On January 10, 2011, Plaintiffs filed an opposition to PHA's second motion to strike (Docket No. 139). Therein, Plaintiffs concede that their opposition to PHA's first motion to strike was untimely. However, Plaintiffs urge the Court to consider the motion because of the strong public policy interest of resolving issues on the merits and because the Federal Rules of Civil Procedure provides the Court with wide discretion in setting time limits.[11]

On April 6, 2011, Landlord filed a motion renewing their previous motion to dismiss (Docket No. 156) wherein Landlord evinces similar arguments.[12]

The following day, on April 7, 2011, Plaintiffs filed a motion requesting that

Plaintiffs' Memorandum (Docket No. 131) be deemed unopposed(Docket No. 157).[13]

On April 8, 2011, Plaintiffs filed a motion to strike (Docket No. 158) Landlord's motion renewing their previous motion to strike (Docket No. 156). Plaintiffs avers that Landlord's renewed motion generally rehashes previously articulated arguments. However, Plaintiffs note that Landlord's renewed motion contains a previously unstated argument that the complaint fails to state a cognizable claim under Section 1983. Plaintiffs also assert that this filing violates prior Court's orders (Docket Nos. 122 and 130), as well as the Local Rules, setting filing deadlines.[14]

On May 23, 2011, Individual Defendants filed a motion for joinder (Docket No. 178) seeking to join PHA's *Reply and Cross–Motion to Dismiss Third Amended Complaint* (Docket No. 114).[15]

On June 1, 2011, Plaintiffs filed a proposed *Opinion and Order* (Docket No. 179). Therein, Plaintiffs reiterated previ-

Plaintiffs' right to enforce the HQS and the existence of a private right of action to enforce HUD benefits. (Docket No. 102). While the Court frowns upon Plaintiffs copious, and too often tangential, filings, the Court, out of an abundance of caution, **DENIES** PHA's motion to strike (Docket No. 134) and declines to strike Docket Nos. 132 and 133 from the record.

However, as these filings contain exhibits that fail to comply with the Local Rules and the Federal Rules of Evidence as Plaintiffs have submitted documents not in the English language and documents that are not properly authenticated, the Court hereby **STRIKES** the exhibits to Docket Nos. 132 and 133. *See* Local Rule 5(g) and Fed.R.Evid. 901 and 902.

11. While Plaintiffs' opposition to PHA's first motion to strike is untimely, in the interest of resolving issues on the merits, the Court will consider Plaintiffs' opposition. Accordingly, PHA's second motion to strike (Docket No. 138) is hereby **DENIED.**

12. As the Court, herein, rules upon the merits of Landlord's first motion to dismiss, the

Court now finds Landlord's motion to reaffirm (Docket No. 156) **MOOT.**

13. The Court hereby **DENIES** Plaintiffs' motion (Docket No. 157) to find Plaintiffs' Memorandum unopposed. Defendants have strenuously objected to the arguments made in Plaintiffs' Memorandum though they have not officially opposed Plaintiffs' motion per se. However, whether a motion is formally opposed or unopposed, this Court is still obligated to resolve the motion on the merits. *See Cordi–Allen v. Halloran,* 470 F.3d 25, 28 (1st Cir.2006)(noting that a district court is bound to a review an unopposed motion for summary judgment on the merits).

14. As the Court has found Landlord's renewed motion (Docket No. 156) moot (see Footnote 12), the Court now finds Plaintiffs' motion to strike (Docket No. 158) **MOOT** as well.

15. The Court hereby **GRANTS** Individual Defendants' motion (Docket No. 178) to join PHA's reply and motion to dismiss (Docket No. 114).

ously advanced arguments in requesting that the Court assert subject matter jurisdiction over Plaintiffs' FHA retaliation claim.

On July 8, 2011, Landlord opposed Plaintiffs' proposed *Opinion and Order* (Docket No. 182). Therein, Landlord argues that it has not waived its objection to Plaintiffs' FHA Retaliation Act claim. Landlord also asserts that their previous motion to dismiss (Docket No. 162), which was responsive to the *Second Amended Complaint* (Docket No. 46), is not moot as result of Plaintiff filing the *Third Amended Complaint* (Docket No. 84). Additionally, Landlord asserts that Plaintiffs never raised an FHA retaliation claim in their *Third Amended Complaint.* As a result, Landlord claims that PHA and Landlord were not on notice of the Plaintiffs' FHA retaliation claim and, as such, did not move to dismiss this claim. Landlord also argues that Plaintiffs' FHA retaliation claim fails on the merits and thus it would futile for Plaintiffs to amended their complaint to include the FHA claim. Landlord asserts that Ana Reyes is not disabled within the meaning of the FHA because her impairment is a result of the ceiling collapsing. Further, Landlord argues that Plaintiffs can not demonstrate discriminatory animus after Defendants leased the Section 8 housing unit to Plaintiffs for over twenty years. Landlord also claims that Plaintiffs lack temporal proximity to establish the causation element of the FHA retaliation claim as Defendants sent the eviction notice nearly three months after Plaintiffs filed the instant suit. Lastly, Landlord stresses that it took no further action to evict Plaintiffs, other than the notice, and, in fact, relocated Plaintiffs to another unit.

On July 19, 2011, Plaintiffs replied to Landlord's opposition to Plaintiff's proposed *Opinion and Order* (Docket No. 188). Therein, Plaintiffs argue that Landlord cannot establish that they were unduly prejudice by Plaintiffs' FHA claim when Plaintiffs first raised this claim nine months ago without any opposition. Thus, Plaintiffs advance that Landlord's objection to this claim is untimely. Additionally, Plaintiffs assert that Landlord cannot cure its waived objection by raising a "Twombly attack" on the FHA claim.

## III. MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Under *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Thus, a plaintiff must now present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal,* 129 S.Ct. 1937. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal,* 129 S.Ct. at 1949–1950 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldo-*

*nado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal,* 129 S.Ct. 1937) (internal quotation omitted).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950 (quoting Fed. R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 1950–51 (citing *Twombly,* 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernandez v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011), (citing *Iqbal,* 129 S.Ct. at 1950).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly,* 550 U.S. at 556, 127

S.Ct. 1955); *Ocasio–Hernandez,* 640 F.3d at 12 (citing *Iqbal,* 129 S.Ct. at 1951); *see Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio–Hernandez,* 640 F.3d at 12 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini,* 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation.").

## IV. LEGAL ANALYSIS

Where "the district court's subject matter jurisdiction is currently in doubt, the case cannot proceed until that is established, and resolving that issue should be the first order of business...." *Pruell v. Caritas Christi,* 645 F.3d 81, 84 (1st Cir. 2011). *See In re Recticel Foam Corp.,* 859

F.2d 1000, 1002 (1st Cir.1988) ("[A] court has an obligation to inquire [ ] into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting."). Accordingly, the Court must first ascertain whether or not the Court retains jurisdiction, partially or totally, in order to allow the Court to proceed with the present controversy.

## A. ELEVENTH AMENDMENT SOVEREIGN IMMUNITY

■ Under Eleventh Amendment [16] jurisprudence, "an unconsenting State is immune from federal-court suits brought by its own citizens as well as by citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).[17] Thus, the "Eleventh Amendment has ... been interpreted to bar suits for monetary relief against the agencies or instrumentalities of a state and against its officers in their official capacities." *Cruz v. Puerto Rico*, 558 F.Supp.2d 165, 173–75 (D.P.R.2007)(citing *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Accordingly, a "suit against a state official in his or her official capacity is not a suit against the official [but] rather is a suit against the official's office ... [and] is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *see Edelman*, 415 U.S. at 663, 94 S.Ct. 1347 (The Eleventh Amendment bars private parties from bringing suits "to impose liability which must be paid from public funds in the state treasury," regardless of whether the state is explicitly named in the suit.).

■ The Supreme Court and the First Circuit has already determined that the Eleventh Amendment applies to Puerto Rico; thus, any private suit against the Commonwealth of Puerto Rico or its officers acting in their official capacities for monetary damages in federal court is barred. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Jusino Mercado v. Commonwealth of Puerto Rico*, 214 F.3d 34 37 (1st Cir.2000); *Negron Gaztambide v. Hernandez Torres*, 145 F.3d 410 (1st Cir.1998). Thus, the Eleventh Amendment "bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico, and by the same token, it bars recovery of damages in official capacity suits brought against Puerto Rico officials." *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 516 (1st Cir.1987) (internal citation omitted).

■ However, the Eleventh Amendment does not bar suits for specific and/or equitable remedies, or remedies for prospective declaratory or injunctive relief against state officers in their official capacity. *Ex Parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see also Mills v. Maine*, 118 F.3d 37, 54 (1st Cir. 1997); *see also Poirier v. Mass. Dep't of Correction*, 558 F.3d 92, 97 n. 6 (1st Cir.

---

16. The Eleventh Amendment reads:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.
 U.S. Const. amend. XI.

17. "Courts must adjudicate plausible challenges to their jurisdiction prior to adjudicating the merits of a case. Moreover, although the Supreme Court has declined to state definitively whether the Eleventh Amendment is a doctrine of subject matter jurisdiction, the Court has stated that the Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power." *Brait Builders Corp. v. Massachusetts, Div. of Capital Asset Mgmt.*, 644 F.3d 5, 10 (1st Cir.2011) (internal citations and quotations omitted).

2009) ("A plaintiff may seek prospective injunctive relief against a state official, but may not obtain such relief against a state or its agency because of the sovereign immunity bar of the Eleventh Amendment."); *see also Puerto Rico Public Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.*, 59 F.Supp.2d 310, 322 (D.P.R. 1999) (quoting *Bowen v. Mass.*, 487 U.S. 879, 894, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), for the proposition that "specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled."). "The line drawn by the Court represents a compromise between the impulse to preserve state autonomy and the need to enforce federal law. Injunctions are necessary to assure the supremacy of national law; damage awards are not." *Santiago v. Corporacion de Renovacion Urbana y Vivienda de P.R.*, 554 F.2d 1210, 1212 (1st Cir.1977).[18]

To determine whether PHA is an arm-of-the-state:

> a court must first determine whether the state has indicated an intention—either explicitly by statute or implicitly through the structure of the entity—that the entity share the state's sovereign immunity. If no explicit indication exists, the court must consider the structural indicators of the state's intention. If these point in different directions, the court must proceed to the second stage and consider whether the state's treasury would be at risk in the event of an adverse judgment.

*Redondo Constr. Corp. v. P.R. Highway & Transp. Auth.*, 357 F.3d 124, 126 (1st Cir. 2004) (citation omitted); *see also Fresenius Med. Care Cardiovascular Res., Inc. v.*

*P.R. & the Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 65–66 (1st Cir.2003).

■ In the pending matter, the PHA is a subsidiary of the Government Development Bank for Puerto Rico ("GDB"). On May 13, 1942, the Puerto Rico Legislative Assembly created the GDB through enacting Act 252 for the purpose of attaining "the complete development of the human and economic resources of Puerto Rico." Through Act 272 of May 15, 1945, the Bank would acquire its final form which authorized it to act as fiscal agent and financial advisor of the Commonwealth and its agencies. Furthermore, Act 17 of September 23, 1948 established the Charter of GDB as well as its duties and powers.

As the Puerto Rico Legislative Assembly created the GDB, passed its Charter and delegated power to the bank for the benefit of developing the resources of Puerto Rico, the Court is able to conclude that GDB is an arm of the state for Eleventh Amendment purposes.

Pursuant to Act No. 17, as amended, GDB was endowed with the power to create subsidiary corporations. On November 16, 1977, the Board of Directors of GDB approved Resolution No. 4023 (the "Enabling Resolution") creating the Puerto Rico Housing Finance Corporation ("PRHFC") as a subsidiary corporation of GDB. Pursuant to Act No. 103 of the Legislature of Puerto Rico, approved August 11, 2001, as amended by Act No. 107 of the Legislature of Puerto Rico, approved July 31, 2002, (i) PRHFC was renamed the Puerto Rico Housing Finance Authority, (ii) the membership of the Board of Directors of the Authority was set forth, and (iii) the Board of Directors

---

18. There are two general exceptions to the reach of the Eleventh Amendment. *Maysonet–Robles v. Cabrero*, 323 F.3d 43, 49 (1st Cir.2003). "First, Congress may abrogate a State's immunity by expressly authorizing such a suit pursuant to a valid exercise of power. Second, a State may waive its sovereign immunity by consenting to be sued in federal court." *Id.* There are no issues of abrogation or waiver in the instant matter.

of GDB was given overriding power, pursuant to the Enabling Resolution, to set forth and amend the powers and duties of the PHA. The PHA is authorized to issue its notes and bonds to achieve its corporate purposes and to lend money to any person, firm, corporation or other organization for the purpose of developing the economy of Puerto Rico.

As provided by Act No. 103, as amended by Act No. 107, the Board of Directors of the PHA consists of two *ex officio* members, which are the Secretary of Housing (as the chair) and the President of the Board of Directors of GDB. The PHA Board also contains five additional members appointed by the Governor, three of which must be members of the Board of Directors of GDB and two (2) of which must be private sector members.

Multiple structural factors indicate that PHA is a governmental instrumentality of the Commonwealth of Puerto Rico. The statutory provisions and Enabling Resolution describe a public role for PHA for the development of the economy for the benefit of the people of Puerto Rico. The composition to the PHA's Board, being either appointed by the Governor or already board members of GDB, an arm of the state in its own right, provides further evidence of the Commonwealth's interest and control over the PHA. *See Pastrana–Torres v. Corporación de P.R. para la Difusión Pública,* 460 F.3d 124, 127 (1st Cir.2006) (noting that Commonwealth control is indicated where the board comprised of government officials and private citizens is appointed by the governor and confirmed by the Senate). "These structural signals strongly indicate the Commonwealth's 'dignity interest as a sovereign in not being haled into federal court'" embraces the PHA. *Irizarry–Mora v. Univ. of P.R.,* 647 F.3d 9, 15 (1st Cir.2011)(quoting *Fresenius,* 322 F.3d at 63).

However, the PHA has some authority to manage its own day-to-day affairs and choose who, when and where to loan its funds. *See Irizarry–Mora,* 647 F.3d at 16 ("The authority to conduct day-to-day operations is not necessarily inconsistent with a conclusion that the Commonwealth intends [ ] to share its sovereign status."). While we find that the Commonwealth has chosen to share its sovereignty with PHA, out of an abundance of caution, we turn to the second stage of our inquire to ascertain whether to Commonwealth's treasury would be at risk in the event of an adverse judgment. *Redondo Constr. Corp.,* 357 F.3d at 126.

We understand that the vast majority of PHA's funding derives from GDB, a state entity, and/or the Commonwealth itself, with only a fraction emanating from the return on PHA's investments. Hence, allocating any portion of PHA's funds to court judgments would dilute the impact of the public funds that PHA receives and diminish PHA's ability to carry out its mission. *Irizarry–Mora,* 647 F.3d at 17. Thus, the Commonwealth's investment in PHA is at risk when PHA funds are at risk. *Id.* As a result, the Court concludes that PHA is an arm-of-the-state. *See Redondo–Borges v. United States HUD,* 421 F.3d 1, 7 (1st Cir.2005); *Celta Constr. v. United States HUD,* 337 F.Supp.2d 396, 400 (D.P.R.2004)(providing PHA the protection of the Eleventh Amendment where immunity was uncontested).

The case law is clear that as arms of the Commonwealth of Puerto Rico, PHA and Individual Defendants in their official capacities are entitled to immunity from both monetary and retroactive (as opposed to prospective) injunctive relief under the Eleventh Amendment. Accordingly, the Court hereby **DISMISSES WITH PREJUDICE** all claims against PHA for monetary and retroactive injunctive relief. The Court also **DISMISSES WITH PREJU-**

DICE all claims for monetary relief against the Individual Defendants in their official capacities. However, any claims for prospective injunctive relief against PHA and the Individual Defendants in their official capacities remain.

## B. PRIVATE RIGHT OF ACTION UNDER SECTION 8 OF THE U.S. HOUSING ACT

Plaintiffs ardently advance that they have a private right of action to enforce the HQS and other benefits and privileges under Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. § 1437f, and the HUD regulations thereunder, § 982.406 and § 982.456(b)(2). Their arguments are una-

vailing and no Court in the land has held what Plaintiffs now advocate.

Section 8 housing must comply with HQS that HUD prescribes. 42 U.S.C. § 1437f(o)(8)[19] and 24 C.F.R. § 982.401. If a Section 8 landlord fails to maintain the unit in compliance with the HQS, the PHA is obligated to "take prompt and vigorous action to enforce the owner obligations." 24 C.F.R. § 982.404(a)(2). The statute nor the regulations nor any court has burdened a Section 8 tenant with this responsibility or bestowed a Section 8 tenant with this right.

■ We join a long line of courts that have all determined that the Housing Act

---

19. Section 1437f(o)(8) of the Housing Act, which is titled "Inspection of units by PHAs," provides that

(A) In general

Except as provided in paragraph (11), for each dwelling unit for which a housing assistance payment contract is established under this subsection, the public housing agency shall inspect the unit before any assistance payment is made to determine whether the dwelling unit meets the housing quality standards under subparagraph (B).

(B) Housing quality standards

The housing quality standards under this subparagraph are standards for safe and habitable housing established—
(i) by the Secretary for purposes of this subsection; or
(ii) by local housing codes or by codes adopted by public housing agencies
* * *

(C) Inspection

The determination required under subparagraph (A) shall be made by the public housing agency (or other entity, as provided in paragraph (11)) pursuant to an inspection of the dwelling unit conducted before any assistance payment is made for the unit. Inspections of dwelling units under this subparagraph shall be made before the expiration of the 15–day period beginning upon a request by the resident or landlord to the public housing agency or, in the case of any public housing agency

that provides assistance under this subsection on behalf of more than 1250 families, before the expiration of a reasonable period beginning upon such request. The performance of the agency in meeting the 15–day inspection deadline shall be taken into consideration in assessing the performance of the agency.

(D) Annual inspections

Each public housing agency providing assistance under this subsection (or other entity, as provided in paragraph (11)) shall make an annual inspection of each assisted dwelling unit during the term of the housing assistance payments contract for the unit to determine whether the unit is maintained in accordance with the requirements under subparagraph (A). The agency (or other entity) shall retain the records of the inspection for a reasonable time and shall make the records available upon request to the Secretary, the Inspector General for the Department of Housing and Urban Development, and any auditor conducting an audit under section 1437c(h) of this title.

(E) Inspection guidelines

The Secretary shall establish procedural guidelines and performance standards to facilitate inspections of dwelling units and conform such inspections with practices utilized in the private housing market. Such guidelines and standards shall take into consideration variations in local laws and practices of public housing agencies and shall provide flexibility to authorities appropriate to facili-

does not expressly grant a private right of action to individuals who are suing HUD over the poor quality of their Section 8 housing. *See* 42 U.S.C. § 1437f(*o*)(8); 5 24 C.F.R. § 982.401 et seq.; *Hill v. Richardson,* 7 F.3d 656, 658 (7th Cir.1993) ("[Section] 1437f does not create a private right of action."); *Kirby v. Richmond Redevelopment & Housing Authority,* No. 04–0791(REP)(MHL), 2005 U.S. Dist. LEXIS 43546, 2005 WL 5864797, at *7 (E.D.Va. Sept. 28, 2005), aff'd, 194 Fed. Appx. 105 (4th Cir.2006) ("No express private right of action exists in [the Housing Act] or the regulations enabling a voucher participant to enforce the provisions."); *see Gilchrist v. Bakshi,* No. 09–0415, 2009 U.S. Dist. LEXIS 115614, 2009 WL 4909439, at *2–*3 (D.Md. Dec. 10, 2009), (holding that the Housing Act does not create a federal right of action against HUD for failing to enforce a landlord's compliance with the HQS); *Lindsay v. New York City Housing Authority,* No. 95–3315, 1999 U.S. Dist. LEXIS 1893, 1999 WL 104599, at *4 (E.D.N.Y. Feb. 24, 1999) (stating that 24 C.F.R. § 982.406 "unambiguously denies a private right of action"); *Green v. Konover Residential Corp.,* No. 95–1984, 1997 U.S. Dist. LEXIS 18893, 1997 WL 736528, at *8 (D.Conn.1997) (finding that no private right of action exists under § 1437 "for failure to maintain the premises in a safe and sanitary condition," because Congress's intention was that "HUD should enforce the required conditions by asserting its rights under the HAP contracts, thereby foreclosing private enforcement of the requirements under the Housing Act").

■ Moreover, there exists no implied right of action under Section 1437f of the Housing Act. "[T]he Supreme Court has come to view the implication of private remedies in regulatory statutes with increasing disfavor." *Hallwood Realty Partners, LP v. Gotham Partners, LP,* 286 F.3d 613, 618 (2d Cir.2002). The Court assess whether there is an implied right of action by applying the four-factor test set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).[20] "A plaintiff asserting an implied right of action under a federal statute bears the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the statute. In other words, [a plaintiff] must overcome the familiar presumption that Congress did not intend to create a private right of action." *Casas v. Am. Airlines, Inc.,* 304 F.3d 517, 521–522 (5th Cir.2002); *see Stowell v. Ives,* 976 F.2d 65, 70 n. 5 (1st Cir.1992)("There is a presumption against implied rights of action-a presumption that will endure unless the plaintiff proffers adequate evidence of a contrary congressional intent.").

In employing these principals, the Court finds that low income families in need of affordable housing are the intended beneficiaries of Sections 1437; however, these provisions contain only broad declarations of housing policy which Congress did not intend to be transferred into a private right of action for monetary damages. *Furtick v. Medford Hous. Auth.,* 963 F.Supp. 64, 71 (D.Mass.1997)(citing *Falzarano v. United States,* 607 F.2d 506, 509

---

tate efficient provision of assistance under this subsection.
42 U.S.C. § 1437f(*o*)(8).

**20.** The four-part analysis is as follows:
(1) Is this plaintiff a member of the class for whose "especial" benefit the statute was passed? In other words, does the statute create a federal right for this plaintiff?

(2) Is there any evidence of legislative intent, either explicit or implicit, to create or deny a private remedy?

(3) Is it consistent with the legislative scheme to imply a private remedy?

(4) Is the cause of action one traditionally relegated to state law so that implying a federal right of action would be inappropriate?

(1st Cir.1979)). Simply we cannot find that Congress intended to create a private right of action under this statute and, accordingly, Plaintiffs' claims under the U.S. Housing Act are hereby **DENIED.** *Gonzaga University v. Doe,* 536 U.S. 273, 286, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) ("Where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit ... under an implied right of action."); *Royal Bus. Group Inc. v. Realist, Inc.,* 933 F.2d 1056, 1060 (1st Cir.1991)("Unless congressional intent to allow the private right of action can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.")(internal citation omitted).[21]

Plaintiffs' lack of an expressed or implied right of action ends our inquiry. However, out of an abundance of caution, the Court will briefly discuss two other arguments Plaintiffs raised under this Act.

■ First, Plaintiffs advance that Section 1437d(1)(5) protects the "Tenants' entitlement by prohibiting the termination of tenancy or lease without good cause." It is difficult to contemplate what could be better cause than concrete failing from the ceiling, while the remaining concrete precipitously dangles above a tenant's head like the Sword of Damocles. It is quite easy for the Court to conclude that when there is substantial structural damage to a housing unit, and thus the unit no longer complies with the HQS, the PHA is not depriving a voucher recipient of a right in not re-certifying that unit; in fact, it would seem quite dangerous and negligent to allow any tenant to reoccupy a unit that has not been structurally secured. As PHA has no control over how quickly, or if at all, Landlord will repair the unit to satisfy the HQS standards, PHA was more than reasonable in not re-certifying Plaintiffs' prior home, Apartment 1–E, and suggesting that Plaintiffs obtain alternative housing.

Secondly, Plaintiffs rely on the regulations promulgated under Section 8. Plaintiffs claim that 'HUD Regulation unambiguously recognized the Tenants' 'right' to enforce the "owner's obligations" under the Tenancy Addendum of their Lease Contract that HUD prescribed "in accordance with Federal law and regulation." (Docket No. 107). Plaintiffs rely upon 24 C.F.R. 982.456(b)(2):

> The tenant may exercise any right or remedy against the owner under the lease between the tenant and the owner, including enforcement of the owner's obligations under the tenancy addendum (which is included both in the HAP contract between the PHA and the owner; and in the lease between the tenant and the owner.)

Under the Tenancy Addendum, Plaintiffs cobble together two different provisions. Paragraph 2(b), under the section entitled Lease, states that "The tenant shall have the right to enforce the tenancy addendum

---

21. We note that a plethora of other courts have found similarly. *See Perry v. Housing Auth. of Charleston,* 664 F.2d 1210, 1216–17 (4th Cir.1981) (no private right of action under sections 1437, 1441, and 1441a); *Cedar-Riverside Assocs. Inc. v. City of Minneapolis,* 606 F.2d 254, 257–59 (8th Cir.1979) (no private right of action under sections 1441 and 1441a); *Chavis v. Bush,* 305 Fed.Appx. 11, 12 (3d Cir.2008) (noting that the District Court found that § 1437(f), which does not provide for a private right of action except for recovery of rent and utility allowances); *Edwards v. District of Columbia,* 628 F.Supp. 333, 340 (D.D.C.1985) (no private right of action under section 1437); *West Zion Highlands v. City of Zion,* 549 F.Supp. 673, 676 (N.D.Ill.1982) (no private right of action under section 1441); *Thompson v. Binghamton Hous. Auth.,* 546 F.Supp. 1158, 1181–83 (N.D.N.Y.1982) (no private right of action under section 1437).

against the owner." Paragraph 14(a), under the section entitled, Conflict with Other Provisions of Lease, states that "The terms of the tenancy addendum are prescribed by HUD in accordance with Federal law and regulation."

Plaintiffs reliance on regulation 982.456(b)(2) and the Tenancy Addendum is misplaced. The cited regulation and Paragraph 2 merely state that a tenant has the right to enforce the terms of his lease agreement, which includes the Tenancy Addendum, against the owner and Paragraph 14 is not relevant as there is no conflict with another provision of the lease agreement. Further, were the Court to give credence to Plaintiffs' interpretation, Plaintiffs would have not just a private right of action under the U.S. Housing Act, but would have a private right of action under absolutely any federal law. Thus, Plaintiffs' tortured interpretation would produce an absurd result. *See Greenwood Trust Co. v. Massachusetts,* 971 F.2d 818, 825 (1st Cir.1992) ("[A] court must always hesitate to construe words in a statute according to their apparent meaning if to do so would defeat Congress's discovered intendment.").

▬ Moreover, Plaintiffs' ignores other, more specific regulations, which clearly states that Tenants do not have a right to enforce such claims against HUD, the PHA or Landlord. We briefly note regulations 982.456(c) and 982.406:

The HAP contract [which includes the Tenancy Addendum] shall not be construed as creating any right of the family or other third party (other than HUD) to enforce any provision of the HAP contract, or to assert any claim against HUD, the PHA or the owner under the HAP contract.

24 C.F.R. 982.456(c)

Part 982 does not create any right of the family, or any party other than HUD or the PHA, to require enforcement of the HQS requirements by HUD or the PHA, **or to assert any claim against HUD or the PHA, for damages, injunction or other relief, for alleged failure to enforce the HQS.**

24 C.F.R. 982.406 (emphasis added).

At any rate, Plaintiffs' argument is unequivocally foreclosed by applicable case law which holds that "[r]egulations alone cannot create private rights of action; the source of the right must be a statute." *Buck v. Am. Airlines, Inc.,* 476 F.3d 29, 33 (1st Cir.2007). As the Supreme Court stated:

**Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.** Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But **it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress.** Agencies may play the sorcerer's apprentice but not the sorcerer himself.

*Alexander v. Sandoval,* 532 U.S. 275, 291, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (internal citations omitted)(emphasis added). *See Bonano v. E. Caribbean Airline Corp.,* 365 F.3d 81, 84 (1st Cir.2004) ("In all events, a regulation, on its own, cannot create a private right of action. The source of any such right must be found in the text of the statute.")(internal citations omitted). As stated above, the statute creates no such right.

▬ Plaintiffs also assert that they are third party beneficiaries under the HAP contract between the PHA and Landlord. This argument is also without merit and has been foreclosed by prior case law. As stated by the First Circuit:

Plaintiffs allege that they are entitled to recover on the grounds that they are third party beneficiaries of the regulatory agreement between HUD and the landlords. This theory has been raised and rejected before.... The regulatory agreements at issue here do not disclose an intent to benefit the tenants, except as they might be incidental beneficiaries; nor can the tenants qualify as either creditor or donor beneficiaries. There is, therefore, no basis for federal jurisdiction grounded on a third party beneficiary theory.

*Falzarano v. United States,* 607 F.2d 506 (1st Cir.1979).

For all these reasons, the Court concludes that Plaintiffs lack a private, or implied, right of action under 42 U.S.C. § 1437. Therefore, we **DISMISSES** all of Plaintiffs' claims under the U.S. Housing Act **WITH PREJUDICE.**

### C. SECTION 1983

■ Section 1983 does not create any independent substantive rights, but rather provides a cause of action or vehicle by which individuals may vindicate violations of their constitutional rights and/or rights protected by federal law.[22] *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Cruz–Erazo v. Rivera–Montañez,* 212 F.3d 617 (1st Cir.2000). Section 1983 merely provides remedies for

deprivations of rights that are enshrined elsewhere. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). When assessing the imposition of liability under § 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 558 (1st Cir.1989), citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Acting under color of state law requires that "defendant in § 1983 action have exercised power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

■ Plaintiffs bring their Section 1983 claim under the Due Process Clause of the Fifth and Fourteenth Amendments.[23] The Due Process Clause of the Fifth Amendment only applies to the federal government and none of the defendants in the instant suit are, or are alleged to be, federal actors. *See Martinez–Rivera v. Ramos,* 498 F.3d 3 (1st Cir.2007) ("The Fifth Amendment Due Process Clause ... applies 'only to actions of the federal government—not to those of state or local governments.'")(quoting *Lee v. City of Los*

---

**22.** Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

**23.** As the Court found that Plaintiffs could not proceed with their claims under the U.S. Housing Act, Plaintiffs may not allege that the U.S. Housing Act secures a federally protected right for Section 1983 purposes. *See Johnson v. City of Detroit,* 446 F.3d 614, 626 (6th Cir.2006) ("Nothing in [Sections 1437 and 1437f] establishes a clear and unambiguous intent by Congress to create privately enforceable rights under § 1983 to ensure compliance with housing quality standards.").

*Angeles,* 250 F.3d 668, 687 (9th Cir.2001)); *see also Dusenbery v. United States,* 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"). Thus, the Court swiftly dismisses Plaintiffs' Fifth Amendment claims with prejudice.

■ The Court similarly is able to dismiss all of Plaintiffs' Section 1983 claims against Landlord with prejudice. Landlord is clearly a private entity that has contracted with the state; the HAP between Landlord and the PHA, however, does not convert Landlord into a state actor. *See Santiago v. Puerto Rico,* 655 F.3d 61, 68 (1st Cir.2011) (Defendants "are without question private parties. The mere fact that they entered into a contract with the [state] Department [of Education] to transport public school students does not alter their status.").[24] Landlord is in no way clothed with authority of the state and thus not a state actor. *Harvey v. Plains Twp. Police Dept.,* 421 F.3d 185, 195 (3d Cir.2005) (holding that plaintiff had failed to establish that the landlord was a state actor because the landlord had merely acted at the police officer's direction in opening the plaintiffs front door); *Hussein v. New Jersey,* 403 Fed.Appx. 712 (3d Cir. 2010) (denying a Section 1983 claim, in part, because landlords were not state actors); *Moral v. Grant County Sheriff,* 424 Fed.Appx. 803 (10th Cir.2011) (holding that landlords were not state actors for Section 1983 purposes); *see also Gayman v. Principal Fin. Servs.,* 311 F.3d 851, 853 (7th Cir.2002) (Easterbrook, J.)(downgrading the notion "that all landlords are state

actors because buildings must conform to zoning and safety codes."). As such, Section 1983 claims against Landlord are hereby **DISMISSED.**

■ As we stated above, PHA is afford the protections of the Eleventh Amendment and therefore, Plaintiffs are unable to bring a Section 1983 claim against PHA for injunctive or monetary relief. While the Individual Defendants also carry the shield of the Eleventh Amendment, Individual Defendants may still be liable in their personal capacities. *See Hafer v. Melo,* 502 U.S. 21, 29–31 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (holding that the Eleventh Amendment does not prohibit suits to impose individual and personal liability on state officers under § 1983); *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza,* 484 F.3d 1, 26 (1st Cir. 2007) ("In short, in a suit against an officer for money damages when the relief would come from the officer's own pocket, there is no Eleventh Amendment bar...."). Thus, having previously determined that the PHA and Individual Defendants are state actors in our Eleventh Amendment analysis, we proceed to examine whether PHA, for purposes of prospective relief only, and Individual Defendants, in their personal capacities only, plausibly meet the second element of Section 1983. More simply, we turn to whether Plaintiffs have plausibly established that these defendants deprived them of a constitutionally or federally protected right or privilege.

Under the Housing Choice Voucher Program, a family is given a voucher and it is their responsibility to find a suitable housing unit in the private market where the landlord agrees to rent that unit and the unit meets an acceptable level of health

---

**24.** There are limited instances where the conduct of private parties may be "fairly attributable to the State" and thus constitute action under the color of law. *Lugar v. Edmondson* *Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). However, these exceptions are not applicable in the instant matter.

and safety standards. In the instant matter, Plaintiffs' unit no longer met the HQS after the ceiling collapsed; and accordingly, the PHA would no longer certify that particular apartment.

A Section 8 tenant does not have the right to choose absolutely any housing unit; their rights are limited to those unit in which the landlord agrees to contract with the local housing authority and is further limited by those units that meet the requisite safety standards. As Plaintiffs' former abode, Apartment 1–E, no longer met the minimum safety standards, Apartment 1–E was properly excluded from the Housing Choice Voucher Program.

However, the PHA, at no time, deprived Plaintiffs of the right to participate in the Housing Choice Voucher Program itself. The PHA never terminated Plaintiffs' government assistance by taking away their voucher; the PHA merely refused to find that Apartment 1–E met the applicable safety standards.[25] As such, Plaintiffs were not deprivation of any cognizable right, and accordingly, Plaintiffs were not entitled to any formal or informal due process proceeding. A right to an informal hearing does not accrue when the PHA refuses to certify a particular unit for not meeting applicable health and safety requirements. *See Fincher v. S. Bend*

*Heritage Found.*, 606 F.3d 331, 333 (7th Cir.2010) (upholding the district court's granting of summary judgment as Section 8 housing applicants do not have a defined property right in receiving housing at a specific location that would entitle them to a due process hearing); *Eidson v. Pierce*, 745 F.2d 453 (7th Cir.1984) (holding that Section 8 housing applicants who meet all Section 8 requirements and have already been deemed eligible for Section 8 do not have a protected right that entitles them to some form of due process when they are rejected from a specific Section 8 housing unit); *Hill v. Group Three Housing Development Corporation*, 799 F.2d 385 (8th Cir.1986) (same). Accordingly, we hereby **DISMISS** Plaintiffs' Section 1983 claims **WITH PREJUDICE.**

### D. REHABILITATION ACT & FAIR HOUSING ACT

Plaintiffs additionally state a cursory argument under the Rehabilitation Act [26] and the Fair Housing Act ("FHA"), which prohibits a broad array of discriminatory housing practices. (Docket No. 84, pages 32–34). Plaintiffs allege that the PHA and Landlord violated these statutes by failing to provide a reasonable accommodation to Plaintiffs and by precluding [Plaintiffs] from enforcing their right to assure the adequacy of the landlord-made repairs in their home of over twenty years [27] (Docket

---

25. Under the Housing Choice Voucher Program, the voucher follows the recipient; hence, a recipient could live in a different apartment every single year and the voucher would follow the tenant, not the apartment. Whereas in "project-based" Section 8 assistance, the assistance stays with the apartment. Thus whomever is living the project-based apartment receives the financial assistance, but if they should move out, then the assistance disappears for those tenants.

26. The Rehabilitation Act's central provision, in pertinent part, states:
No otherwise qualified individual with a disability ... shall, solely by reason of her

or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

27. As discussed above, Plaintiffs lack a right to enforce the HQS and Plaintiffs have not referenced any FHA provision that could potentially grant them this "right." Similarly, Plaintiffs are unable to reference any FHA provision that could potentially grant Plaintiffs the right to assure themselves of the adequacy of the landlord-made repairs, especially in a housing unit where they were not

No. 84, page 33).[28] Despite Plaintiffs' laconism, the Court will address Plaintiffs' contentions out of an abundance of caution.

Under 42 U.S.C. § 3604(f)(1), it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter, [or of] a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(1)(A)-(B). Federal regulations define "handicap," with respect to a person, as physical or mental impairment "which substantially limits one or more major life activities." 24 C.F.R. § 100.20. "Major life activities" is defined as "functions such as caring for one's self, perform-

ing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201(b).

The Rehabilitation Act employs a similar definition of disability, stating that a disabled claimant is one who has a physical or mental impairment which substantially limits one or more major life activities.[29] 29 U.S.C. § 705(20). A regulation implementing the Rehabilitation Act interprets the term "major life activities" to include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Bragdon v. Abbott*, 524 U.S. 624, 639, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)(quoting 45 C.F.R. § 84.3(j)(2)(ii) (1997); 28 C.F.R. § 41.31(b)(2)(1997)).[30]

currently residing. Thus, the Court **DISMISSES** this FHA claim **WITH PREJUDICE.**

**28.** Plaintiffs, subsequent to filing their *Third Amended Complaint* (Docket No. 84), also raise a retaliation claim under the FHA. While all parties have spilled significant ink in assessing whether this claim is proper and thus conveys jurisdiction to Plaintiffs, the cold, hard reality is that Plaintiffs do not state, reference or even allude to a retaliation claim under the FHA in their *Third Amended Complaint. See Young v. Lepone*, 305 F.3d 1, 10–11 (1st Cir.2002). ("The fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint."); *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) ("When ruling on a Rule 12(b)(6) motion to dismiss, a district court is generally limited to considering 'facts and documents that are part of or incorporated into the complaint.' ") (quoting *Trans–Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir.2008)). Accordingly, the Court is compelled to **DISMISS** any claim for retaliation under the FHA **WITH PREJUDICE.**

**29.** The FHA and Rehabilitation Act, as well as the Americans with Disabilities Act, utilize a similar legal framework and thus the analysis under these statutes is largely the same. *See Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 n. 4 (2d Cir.2003) ("Due to the

similarities between the [FHA and ADA], we interpret them in tandem."); *Sharpvisions, Inc. v. Borough of Plum*, 475 F.Supp.2d 514, 521 n. 2 (W.D.Pa.2007) (concluding that the legal analysis under the FHA is "equally applicable" to claims of housing discrimination under the ADA and Rehabilitation Act); *South Middlesex Opportunity Council, Inc. v. Town of Framingham*, 752 F.Supp.2d 85, 114 (D.Mass.2010).

**30.** The FHA and the Rehabilitation Act also allow a plaintiff to establish a disability by demonstrating a record of having an impairment or being "regarded as" having an impairment. Plaintiffs assert that Ana Reyes also qualifies as disabled under these tests, however, Plaintiffs offer nothing more than "bald assertions" to support these legal conclusions. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). Under the applicable *Twombly/Iqbal* standard, the Court is thus compelled to disregard these legal conclusions couched as factual allegations. *See Ocasio–Hernandez v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir.2011) ("A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action.")(quoting *Iqbal*, 129 S.Ct. at 1950; *Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir.2010)) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation.").

■ Plaintiffs allege Ana Reyes was unable to climb the stairs to her third floor apartment and had to be carried up and down the stairways in her wheelchair. The Court will draw upon its own "judicial experience and common sense" in finding that if someone is in a wheelchair and is unable to climb stairs, that person is unable to walk.[31] Therefore, the Court, out an abundance of caution, will presume that Plaintiffs are stating that Ana Reyes has inability to perform a major life activity by not being able to walk and thus is disabled within the meaning of the FHA and the Rehabilitation Act.[32]

■ To establish a prima facie case for failure to accommodate under the FHA, a plaintiff must establish the following: (1) claimant is handicapped within the meaning of § 3602(a) and the defendant knew or should have known of this fact; (2) an accommodation may be necessary and reasonable to afford the handicapped person an equal opportunity to use and enjoy the dwelling; and (3) and the defendant refused to make the requested accommodation. *Astralis Condo. Ass'n v. Sec'y, United States Dep't of Hous. & Urban Dev.,* 620 F.3d 62, 67 (1st Cir.2010)(internal citations and quotations omitted). "But before a district court can assess whether a plaintiff has met his or her burden of establishing each of the elements of a prima facie case, the plaintiff must show that a special accommodation of a disability was, in fact, requested." *Colon–Jimenez v. GR Mgmt. Corp.,* 218 Fed.Appx. 2, 3 (1st Cir.2007)(unpublished). Moreover, Plaintiffs' request for a reasonable accommodation must specifically explain "how the accommodation requested is linked to some disability." *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 261 (1st Cir.2001).

The Court notes that, at least initially, Plaintiffs did not make a request for a reasonable accommodation. In fact, Plaintiffs made the opposite request. Knowing that their prior unit, Apartment 1–E, "is the *only accessible* unit at *ground level* in the Landlord's 22–unit building" (Docket No. 84, page 33)(emphasis in the original), Plaintiff "José Rosa requested Landlord to provide alternative dwelling in the 207 Luna Building ... because he has lived with his wife Mrs. Ana in this same building for more than 20 years and they wanted to remain there." (Docket No. 132, page 2). Landlord agreed to accommodate this request and provided Plaintiffs with an available unit on the third floor of the building.

However, on May 11, 2010, Plaintiffs' counsel sent a letter to Landlord's counsel

---

**31.** The Court notes that most courts, including the First Circuit, have not addressed whether climbing is a major life activity. However, all the courts that have tackled this issue have answered in the negative. *See Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 n. 2 (5th Cir.1996) ("Climbing is not such a basic, necessary function and this court does not consider it to qualify as a major life activity under the ADA."); *Penny v. United Parcel Serv.,* 128 F.3d 408 (6th Cir. 1997) (walking or stair climbing even with "moderate difficulty or pain" does not rise to the level of a disability); *Robinson v. Global Marine Drilling Co.,* 101 F.3d 35 (5th Cir. 1996) (stair climbing that aggravated plaintiff's asbestosis did not qualify as major life activity); *Otting v. J.C. Penney Co.,* 223 F.3d 704, 710 (8th Cir.2000) (climbing ladders is not a major life activity for the purposes of the ADA); *Weber v. Strippit, Inc.,* 186 F.3d 907, 914 (8th Cir.1999) (finding that walking up stairs is not a major life activity for the purposes of ADA); *Harding v. Cianbro Corp.,* 436 F.Supp.2d 153, 174 (D.Me.2006) ("climbing is not a major life activity for purposes of the ADA and Rehabilitation Act.").

**32.** Plaintiffs allegation that Ana Reyes is unable to perform a major life activity is inartfully pled and leaves the Court with significant gaps. Yet, like looking at the stars in the night's sky, Plaintiffs supply, albeit barely, the Court with sufficient information to connect the dots to reveal the constellations.

438

that references Ana Reyes' hospitalization and a phone call between Plaintiffs' counsel and the administrator of the leased unit "to inquire about any reasonable accommodation." (Docket No. 132–2). On May 13, 2010, Plaintiffs' counsel again sent a letter to Landlord's counsel (Docket No. 132–3) reiterating Plaintiffs' request for alternative housing "due to Mrs. Ana's serious leg injury" and stated that Ana Reyes "is now unable to live in any upper-level room and much less to climb up any stairs." Thus, these two letters definitively establish that Plaintiffs' fulfilled their responsibility to put Landlord "on notice by making 'a sufficiently direct and specific request for special accommodations.'" *Gill v. Franklin Pierce Law Center,* 899 F.Supp. 850, 855 (D.N.H.1995) (quoting *Nathanson v. Med. Coll. of Pa.,* 926 F.2d 1368, 1381 (3d Cir. 1991)). Thus, having concluded that Ana Reyes is handicapped within the meaning of the statute, and that Plaintiffs put Landlord on notice, our review of this correspondence demonstrates that Plaintiffs informed Landlord of Ana Reyes' impairment and properly made a request for a reasonable accommodation. Therefore, we find that Plaintiffs have satisfied the first element.

 While Plaintiffs made a request for special accommodations, the Court cannot find that Plaintiffs' requested accommodation was reasonable. Plaintiffs state both that Apartment 1–E "is the *only accessible* unit at *ground level* in the Landlord's 22–unit building" and that "due to Mrs. Ana's serious leg injury[,] she is now unable to live in any upper-level room and much less to climb up any stairs." Thus, seemingly, Plaintiffs' are requesting to re-occupy their former apartment, Apartment 1–E, as it is the only ground floor unit, in order to accommodate Plaintiff Ana Reyes' mobility restrictions. As Plaintiffs are well aware, Apartment 1–E was unhabitable due to the substantial damage from the concrete falling from the ceiling. Thus,

Plaintiffs are making an unreasonable request to relocate to a housing unit that is simply inhabitable. We need not go further. Finding that Plaintiffs fail to set forth a prima facie claim, the Court hereby **DISMISSES** Plaintiffs' FHA and Rehabilitation Act causes of action **WITH PREJUDICE.**

### E. STATE LAW CLAIMS

 Having dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' Puerto Rico law claims. "[A] district court has discretion to decline to exercise supplemental jurisdiction after dismissing 'all claims over which it ha[d] original jurisdiction.'" *Figueroa v. Alejandro,* 597 F.3d 423, 431 n. 10 (1st Cir.2010) (*quoting* 28 U.S.C. § 1367(c)(3)). *See Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1176 (1st Cir.1995) (finding that dismissal of supplemental state actions without prejudice is appropriate where there is an "unfavorable disposition of a plaintiff's federal claims" before trial). Although "[i]n an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims," the usual case will point toward declining to exercise jurisdiction over the remaining state-law claims when the Court balances the factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity. *Id.* at 1176; *see also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Consequently, the Court **DISMISSES** Plaintiffs' state law claims **WITHOUT PREJUDICE.**

### V. CONCLUSION

The Court is not unsympathetic to Plaintiffs' plight nor blind to the very real harms Plaintiffs have suffered. Plaintiffs'

injuries may be very likely be actionable by law. However, as Plaintiffs have not pled a federal cause of action, their redress lies in state court as this Court is deprived of jurisdiction to provide their requested relief.

For the reasons stated above, Defendants' motions to dismiss (Docket Nos. 62 and 66) are hereby **GRANTED.** Accordingly, all of Plaintiffs' federal causes of action under the U.S. Housing Act, Section 1983, the Fair Housing Act and the Rehabilitation Act are hereby **DISMISSED WITH PREJUDICE.** Plaintiffs' state law causes of action are hereby **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**